{¶ 1} Appellants, Brittany Spears ("Brittany") and Brandon Haller ("Brandon"), parents of D.H., appeal the September 21, 2006 judgment of the Court of Common Pleas, Marion County, Ohio, Family Division, wherein the permanent custody of the minor child, D.H., was placed with Marion County Children Services (MCCS), separately.
 {¶ 2} On July 21, 2003, 16-year old Brittany gave birth to D.H. Due to familial issues in the home, Brittany and D.H. were removed from the home on February 7, 2004. Both Brittany and D.H. were placed in the same foster home in Piqua, Ohio until July of 2004, when they were transferred into the Rostorfer's foster home in Marion, Ohio.
 {¶ 3} On September 16, 2004, a complaint was filed by the Marion County Children Services Board (MCCSB) alleging that Brittany and D.H. were dependent and neglected. At a pretrial hearing on November 23, 2006, it was stipulated by the parties that both Brittany and D.H. were dependent. *Page 3 
 {¶ 4} On September 27, 2004, a case plan was approved by the trial court which required that Brittany attend school, refrain from the use of illegal substances, counsel with the mental health agency, and obtain employment. Brandon was required to refrain from using illegal substances, refrain from domestic violence, follow probation orders, complete a psychological evaluation, and visit with D.H. Brittany was offered many services to maintain her in a home with her child in that home until she would eventually be emancipated, have a diploma, and be equipped to care for herself and her child.
 {¶ 5} Between May of 2005 and August of 2005 when custody over Brittany was terminated, Brittany's case worker Ms. Umoh stated that Brittany was doing well by, "managing school, a job, and a pretty tight schedule, and her daughter, as well as counseling * * *." The MCCSB originally determined that Brittany, if she continued to succeed, would receive custody of D.H. in September of 2005, however, this date was later revised because of the delay in finding Brittany suitable housing.
 {¶ 6} Brittany became emancipated on August 24, 2005 when she moved from the Rostorfer foster home to the Fairview Apartments in Marion, Ohio. She subsequently moved in with her boyfriend at 284 Windsor Street, Marion, Ohio.
 {¶ 7} Shortly after her emancipation, her "mentor," Ms. Dale, made allegations that Brittany was having parties involving alcohol at her apartment. *Page 4 
Ms. Dale testified that she never personally saw Brittany drink alcohol but Brittany had told her about parties that she had when she was living at the Fairview Apartments. However, Ms. Dale's report to the MCCSB was enough for the MCCSB to install a new case plan revoking Brittany's unsupervised visits and replacing them with supervised visits. This revocation occurred on September 26, 2005.
 {¶ 8} Around the time Brittany lost her unsupervised visits with D.H., she regressed rapidly. She lost her job, dropped out of school, plead to two underage consumption charges (October 18, 2005 and November 21, 2005), and plead to two obstructing official business charges by not allowing the police entrance into her apartment.
 {¶ 9} On January 19, 2006, MCCSB filed a motion requesting permanent custody of D.H. pursuant to R.C. 2151.413. Hearings were held on May 1, 2006, July 6, 2006, and August 8, 2006. Both parents were present with counsel and both had been represented throughout the permanency hearing. MCCSB presented seven witnesses. The mother, the father, and the maternal grandmother also testified. The Guardian Ad Litem submitted an eighteen page report on July 28, 2006 recommending another chance for the mother and that the motion for permanent custody be denied or that a decision be delayed. On September 21, 2006, the trial court granted MCCSB's motion for permanent custody. *Page 5 
 {¶ 10} On October 19, 2006, both parents filed a notice of appeal alleging the following respective assignments of error:
 Mother's Assignment of Error THE TRIAL COURT'S AWARD OF PERMANENT CUSTODY OF DESAREA HALLER TO MARION COUNTY CHILDREN'S SERVICES BECAUSE THE CHILD COULD NOT BE PLACED WITH HER MOTHER WITHIN A REASONABLE PERIOD OF TIME AND THAT AN AWARD OF PERMANENT CUSTODY WAS IN THE BEST INTEREST OF THE CHILD WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS CONTRARY TO LAW.
 Father's Assignment of Error THE TRIAL COURT ERRED BY FINDING THAT PERMANENT CUSTODY WAS IN THE CHILD'S BEST INTEREST.
 {¶ 11} In our review of a grant of permanent custody we shall note that "[i]t is well recognized that the right to raise a child is an `essential' and `basic civil right.'" In re Hayes (1997),79 Ohio St.3d 46, 48, 679 N.E.2d 680, citing In re Murray (1990), 52 Ohio St.3d 155,157, 556 N.E.2d 1169. "A parent's right to the custody of his or her child has been deemed `paramount'" when a parent is a suitable person.In re Hayes, supra; In re Murray, supra. The Supreme Court of Ohio has held that a parent "must be afforded every procedural and substantive protection the law allows." In re Hayes, supra. *Page 6 
 {¶ 12} Before a natural parent's constitutionally protected liberty interest in the care and custody of her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. Santowsky v.Kramer (1982), 455 U.S. 745, 759, 102 S.Ct. 1388, 71 L.Ed.2d 599. An appellate court's review of a trial court's decision finding clear and convincing evidence is limited to whether sufficient credible evidence exists to support the trial court's determination. In re Starkey,150 Ohio App.3d 612, 782 N.E.2d 665, 2002-Ohio-6892, at ¶ 16. "A reviewing court will reverse a finding by the trial court that the evidence was clear and convincing only if there is sufficient conflict in the evidence presented." In re Rodgers (2000), 138 Ohio App.3d 510, 520,741 N.E.2d 901. Thus, it is within these constructs that we now examine the assignments of error.
 {¶ 13} The Ohio Revised Code sets out a two-pronged test to be applied when considering a motion for permanent custody. Under this test, the trial court must determine, by clear and convincing evidence, (1) that a grant of permanent custody to the ACCSB is in the best interest of the child and (2) that one of four enumerated factors applies. R.C.2151.414(B)(1). In consideration of a motion for permanent custody, R.C.2151.414(B)(1) states:
 Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best *Page 7 interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 * * *
 (d) [t]he child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.
Furthermore, in determining the best interests of the child, the trial court must consider the specific factors listed in R.C. 2151.414(D), including:
 In determining the best interest of the child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be *Page 8 achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in division (E)(7) to (11) of this section apply in relation to the parents and child.
 The Supreme Court of Ohio has held:
 Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate; being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal.
Cross v. Ledford (1954), 161 Ohio St. 469, 477, 120 N.E.2d 118, citingMerrick v. Ditzler (1915), 91 Ohio St. 256, 110 N.E. 493. In addition, when "the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Cross, supra. Thus, we are required to determine whether the evidence was sufficient for the trial court to make its findings by a clear and convincing degree of proof.
 {¶ 14} In this case, the trial court stated the following in its September 21, 2006 Judgment Entry:
 FINDINGS OF FACT 1. Brittany Spears, the mother, has a history of instability and alcohol and drug use, and denial of allegations made against her and lying about them.
 2. Brittany told Sandy Anderson, Independent Living Coordinator, that she was employed at Silver Line. Ms. *Page 9 Anderson was informed by Silver Line that they had never heard of her.
 3. Brittany quit school and lost her job at Wendy's due to excessive absenteeism.
 4. Linda Umoh, CBS caseworker, testified that Brittany failed to to (sic) attend 15 out of a potential 24 visits beginning November 15, 2005. She testified that there were services that CSB could offer but Brittany wouldn't take advantage of them.
 5. Ed Klages, Licensed Independent counselor, testified that Brittany has poor judgment, defies authority, has a substance abuse problem, can't think ahead and lack of maturity and impulse control. (ORC 2151.414(B)(1)
 6. Patty Dale, a mentor for Brittany, testified as to the help she gave Brittany but concluded by testifying that "I couldn't help her if she wouldn't help herself".
 7. Brittany is currently living with Eli Oney, father of her unborn child. Mr. Oney has an extensive criminal history.
 8. Dr. McIntyre, Psychologist, testified that Brittany would need a great deal of support and then it would be a year, in his opinion, before Brittany would be ready for custody. He stated that a second child would greatly increase the stress and ability to handle children. (ORC 2151.414(B)(2)
 9. Brandon Haller, father, was in a community based correction facility following his incarceration for a felony conviction. He admitted he didn't do the case plan or take drug tests because he didn't agree with it. He testified he used cocaine for 1 or 2 years and that he had two or three convictions for driving under suspension. Finally, he testified that he couldn't take custody and care of D[.H.] at this time but wanted [D.H.] returned to custody of her mother. (ORC 2151.414(E)(1)
 10. The best indicator of future behavior is past behavior. Neither parent has demonstrated a commitment to raising and parenting this child per ORC 2151.414(E)(1).
 Evidence presented is clear and convincing that permanent custody should be granted to Marion County Children Services. *Page 10 
 {¶ 15} Upon review of the record, this Court finds that the trial court did not address all of the specific factors listed in R.C.2151.414(D), specifically factors (1), (2) and (4) of R.C. 2151.414(D).
 {¶ 16} Pursuant to R.C. 2151.414(D)(1), the trial court shall consider the interaction and interrelationship of the child with the child's parents. In this case, the trial court did not address the interaction and interrelationship of D.H. with either of her parents or with any other person who may significantly affect the child.
 {¶ 17} Pursuant to R.C. 2151.414(D)(2), the trial court shall consider the wishes of the child as expressed through the child's guardian ad litem. In this case, the Guardian Ad Litem prepared a thorough report as a result of an independent investigation. The Guardian Ad Litem viewed many documents and interviewed and contacted numerous individuals and came to the recommendation after eighteen pages of analysis that it would be in the best interest of D.H. to deny the motion for permanent custody to MCCS and continue temporary custody with MCCS with a review set in 90 to 120 days to determine the progress of the case and the parties involved. However, the trial court did not address the wishes of the child expressed through the child's guardian ad litem in its findings.
 {¶ 18} Pursuant to R.C. 2151.414(D)(4), the trial court shall consider the child's need for a legally secure permanent placement and whether the type of *Page 11 
placement can be achieved without a grant of permanent custody to the agency. The trial court in this case did not address whether D.H. had a need for a legally secure permanent placement or whether the only type of placement that would achieve this goal would be through a grant of permanent custody to MCCS.
 {¶ 19} Although not expressly required by the statute, the better practice would clearly be for the trial court to recite its findings in the specific terms of the required factors of R.C. 2151.414(D). In any event, in our view, it is not sufficient for the trial court to simply rely on the appellate court to review the factual record or narrative and then make the necessary inferences to determine whether the trial court must have considered each of the required statutory factors.
 {¶ 20} Accordingly, we hold that in rendering its judgment, the trial court must either specifically address each of the required considerations set forth in R.C. 2151.414(D) in its judgment entry, or otherwise provide some affirmative indication in the record that the court has considered the specific factors listed in R.C. 2151.414(D).
 {¶ 21} We further find that, while the weight to be given to a guardian ad litem report is always within the prerogative of the trial court, when the trial court renders a decision which goes against the specific recommendation of the guardian ad litem, the trial court must at least address the reasons for doing so. *Page 12 
 {¶ 22} For the foregoing reasons, we vacate the judgment of the trial court and remand this case to that court to address the Guardian Ad Litem report and the specific factors listed in R.C. 2151.414(D) which were insufficiently addressed in the trial court's September 21, 2006 Judgment Entry.
Judgment vacated and remanded.
 PRESTON and WILLAMOWSKI, JJ., concur. *Page 1