[Cite as *In re R.S.* , 2010-Ohio-2160.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

IN THE MATTER OF:

   R.S.,

[TAMMY MARTIN -

    APPELLANT].

CASE NO.  9-09-25

O P I N I O N

Appeal from Marion County Common Pleas Court
Juvenile Division
Trial Court No. 2007-AB-00036

**Judgment Affirmed**

**Date of Decision:   May 17, 2010**

APPEARANCES:

   *Kevin P. Collins*  for Appellant

   *James P. Luton and Megan K. Brady*  for Appellee

   *Tim Roston,* Guardian Ad Litem

   *Larry Heiser*  for Father

Case No. 9-09-25

**SHAW, J.**

{¶1} Appellant Tammy Martin ("Tammy") appeals the June 19, 2009 Judgment of the Marion County Court of Common Pleas, Juvenile Division, terminating her parental rights and granting permanent custody of her child, R.S., to Appellee Marion County Children Services Board ("MCCSB").

{¶2} On October 27, 2006, Tammy gave birth to R.S. while serving an eleven-month prison sentence at the Marysville Reformatory for Women. Tammy was permitted to remain with R.S. through the participation of a program which allowed mothers to provide support for nutrition and build the immunity of the child while imprisoned. However, Tammy was subsequently involved in an altercation with another inmate-participant which resulted in her removal from the program. As a result, on March 16, 2007, R.S. was placed in the custody of MCCSB because, at that time, the identity of the child's father was unknown and Tammy refused to disclose any contact information of her other relatives. MCCSB placed R.S. in a foster-to-adopt[1] home pursuant to an *ex parte* emergency custody order.

---

[1] This label is somewhat of a misnomer in this instance. A foster-to-adopt home is simply a home in which the parents have had the requisite training and education to be foster parents, and at the same time have either completed or are in the process of completing the requisite training to be certified as an adoptive home. The record indicates that at this time MCCSB's goal was the reunification of R.S. and Tammy. In fact, the MCCSB caseworker handling this case, testified that "[w]hen [R.S.] came into our care, it was actually felt that it was going to be a very short-term situation until mom got out of prison and a quick reunification, that it was just a temporary situation." (*Trans*. p. 130, ln. 7-11).

-2-

**{¶3}** On March 20, 2007, the trial court approved MCCSB's motion for temporary custody and subsequently approved the proposed case plan on April 19, 2007. The case plan required Tammy to obtain stable housing by July 7, 2007—within sixty days of her scheduled release from prison on May 16, 2007—and to maintain such housing and basic utilities for at least three consecutive months. In addition, the plan required Tammy to stabilize and maintain her mental health condition diagnosed as bi-polar disorder. Specifically, the plan called for Tammy to attend counseling, see a psychiatrist and take the appropriate medications prescribed to stabilize her mental health.

**{¶4}** Upon her release from prison, Tammy failed to maintain stable housing. Her living arrangements were, at best, sporadic residing at seven different locations including jail during the remainder of 2007. Additionally, she failed to maintain contact with MCCSB to inform the agency of her whereabouts. Jerry Whaley, the MCCSB case worker handling Tammy's case testified to the following:

> **It became clear through the summer when mom disappeared, had no contact with us, with her son, in fact, the times I've been able to have contact with her is when I found out she's at Multi-County Jail, with the exception of a couple phone calls here or there or happenstance when I've come upon her and located her. Her lack of follow-through, not being forthright or honest about things when she's been able to give information were of concern.**

(*Trial Trans.*, p. 130, .ln. 12-21).

{¶5} Based in part on this concern, MCCSB dismissed the original complaint and filed a new complaint, on June 25, 2007, alleging R.S. to be dependent. The new complaint requested a continuation of MCCSB's temporary custody of R.S. and requested that Tammy receive a psychiatric evaluation. On August 9, 2007, the adjudication hearing was held and the trial court determined R.S. to be dependent.

{¶6} On November 7, 2007, a Guardian ad litem ("GAL") was appointed on R.S.'s behalf. On January 10, 2008, MCCS filed a motion for permanent custody stating that R.S. cannot or should not be placed with Tammy within a reasonable time pursuant to R.C. 2151.414(B)(2).

{¶7} On April 29, 2008, a hearing was held concerning MCCSB's motion for permanent custody. At the hearing, it was discovered that Lee McGary ("McGary") may be the potential father of R.S. The hearing on MCCSB's motion was continued in order to conduct a paternity test. The test results confirmed McGary to be the biological father of R.S. Counsel was then appointed for McGary to represent his interests as R.S.'s father in this case.

{¶8} Additionally, Tammy had not attended any of the scheduled visitations with R.S. from July 2007 to May 2008. Tammy was again incarcerated during October and November of 2008. From May to December of 2008, Tammy began to exercise her visitation rights, attending half of the scheduled visits.

{¶9} On December 18, 2008, the GAL filed his report recommending that MCCSB's motion for permanent custody be denied. In his report, the GAL stated he believed R.S. could be placed with Tammy within a reasonable period of time. On April 29, 2009, the matter was heard before the court. Several witnesses testified, including Tammy, McGary, the GAL, and Jerry Whaley— the MCCSB caseworker handling the case. On June 19, 2009, the trial court entered its Judgment granting MCCSB's motion for permanent custody of R.S. Tammy appeals from this judgment and asserts the following assignments of error.

**ASSIGNMENT OF ERROR NO. I**

**THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO PROVE CLEARLY AND CONVINCINGLY THAT IT WAS IN THE BEST INTERESTS OF R.S. TO BE PLACED IN APPELLEE'S PERMANENT CUSTODY, AND THAT [R.S.] COULD NOT BE PLACED WITH EITHER PARENT WITHIN A REASONABLE TIME**

**ASSIGNMENT OF ERROR NO. II**

**THE DECISION OF THE FAMILY COURT IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE**

{¶10} For ease of discussion, we elect to address Tammy's assignments of error together. Tammy alleges that the findings made by the trial court to support its grant of permanent custody of R.S. to MCCSB are not consistent with the standard of clear and convincing evidence. Tammy further alleges that the court's

grant of permanent custody to MCCSB is against the manifest weight of the evidence.

{¶11} As an initial matter, we note that "[i]t is well recognized that the right to raise a child is an 'essential' and 'basic' civil right." *In re Franklin*, 3rd Dist. Nos. 9-06-12, 9-06-13, 2006-Ohio-4841 citing *In re Hayes* (1997), 79 Ohio St.3d 46, 48, 679 N.E.2d 680. The Supreme Court of Ohio has held that a parent "must be afforded every procedural and substantive protection the law allows." *In re Hayes*, supra, quoting *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45.

{¶12} Before a juvenile court may terminate parental rights and award permanent custody of a child to a properly moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period,[2] or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). *In re D.M.*, 2005-Ohio-6740 at ¶ 11 citing R.C.

---

[2] For the purposes of division (B)(1) of R.C. 2151.414, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty (60) days after the removal of the child from the home.

2151.414(B)(1)(a) through (d) and (2); see also, *In re William S.* (1996), 75 Ohio St.3d 95, 99, 661 N.E.2d 738.

{¶13} "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 120 N.E.2d 118. Further, "[i]t is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *Id.*, citing *Merrick v. Ditzler* (1915),91 Ohio St. 256, 110 N.E. 493. In *Cross*, the Ohio Supreme Court further held:

> **Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. * * * The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.**

*Cross*, 161 Ohio St. at 477-478, 120 N.E.2d 118 (internal citations omitted). Once the clear and convincing standard has been met to the satisfaction of the trial court, "the reviewing court must examine the record and determine if the trier of fact had

sufficient evidence before it to satisfy this burden of proof." *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368, citing *Cross*, supra. "The determination of the [trial] court should not be overturned unless it is unsupported by clear and convincing evidence." *In re Adoption of Holcomb*, supra.

{¶14} In analyzing the first prong of the permanent custody test, we note that the trial court must determine, by clear and convincing evidence, whether any of the subsections of 2151.414(B) have been met. In the present case, MCCSB's motion for permanent custody alleged that R.S. cannot or should not be placed with either parent within a reasonable time pursuant to R.C. 2151.414(B)(2).

{¶15} Revised Code Section 2151.414(E) sets forth the elements necessary to satisfy an R.C. 2151.414(B)(2) determination that the child cannot or should not be placed with his parents within a reasonable time and states, in pertinent part:

> **In determining \* \* \* whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, \* \* \* that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:**

> **(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the**

**parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.**
**\* \* \***
**(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;**
**\* \***
**(16) Any other factor the court considers relevant.**

R.C. 2151.414(E); see also *In re Schaffer*, 111 Ohio St.3d 498, 503, 2006-Ohio-

5513, 857 N.E.2d 532.

{¶16} With respect to this determination the trial court made eleven

specific findings:

**As to the mother, Tammy Martin, the evidence is clear and convincing that she is incapable of caring for of raising the child. The following testimony supports this finding:**

**(1) Mother has had an extensive criminal history. The child was born while Mother was incarcerated at Marysville Reformatory for Women.**

**(2) Mother never maintained stable and permanent housing. Following her release from Marysville Reformatory for Women May 16, 2007, she lived at seven different locations for the rest of 2007. She also was in the Multi-County Jail in Marion in September, 2007 and again in March of 2008. The caseworker testified that many times during the Case Plan, he didn't know how to reach Mother.**

**(3) In May, 2008 Mother tested positive for cocaine.**

**(4) While incarcerated in October-November, 2008, Mother wrote a letter to Children's Services requesting visitation [on] November 12, 2008, the date of her release from jail. Mother failed to show on the date requested.**

**(5) Cindy Wall, Licensed Independent [Chemical Dependency] Counselor, testified that Mother was cocaine and marijuana dependent.**

**(6) Mother testified that when she was released from prison, she felt it would be best if she didn't visit the child. She testified she "didn't feel like it."**

**(7) Mother has never had long term employment, and had not had a job since 2006 before she went to prison.**

**(8) Mother's visitation with child was sporadic.**

**(9) Mother failed to follow the case plan in that she failed to attend counseling and take medication as prescribed.**

**(10) Mother has been diagnosed with a bi-polar disorder.**

**(11) Mother has been involved with domestic violence with a former boyfriend.[3]**

(J.E., Jun. 19, 2009, p. 2-3).

**{¶17}** Based on the excerpt above, it is evident that the trial court made findings specifically touching on R.C. 2151.414(E)(1) and (4). As for R.C. 2151(E)(1), the court found that Tammy had failed to comply with the case plan which required that she maintain her own caseworker-approved housing, including

---

[3] The record indicates that the domestic violence actually occurred with Tammy's current live-in boyfriend with whom she still resides.

no less than electric, water, and an approved source of heat for no less than three consecutive months; that she report any change of residence to the caseworker within 72 hours; that she will attend all counseling sessions as established by her counselor/therapist and follow all recommendations of her counselor/therapist; that she attend all appointments with her psychiatrist as established and/or recommended by the psychiatrist or counselor/therapist; she will take all medications prescribed to her by a medical doctor and/or her psychiatrist in the manner it is prescribed; (i.e. dose and frequency).

{¶18} The record provides ample evidence to support the trial court's findings that Tammy failed to continually and repeatedly comply with the case plan to substantially remedy the conditions which resulted in R.S.'s removal from Tammy's custody. For example, during the year following her release from prison, when the case plan was in effect, Tammy was charged and convicted of eight misdemeanor crimes including: two counts of disorderly conduct, three counts of theft, one count of complicity to theft, one count of criminal trespass and one count of unauthorized use of a motor vehicle. (MCCSB's trial exhibits 4(b)-(j)). Tammy's repeated pattern of engaging in unlawful conduct resulted in her spending more time in jail. This further prevented her from being able to establish and maintain stable housing for at least three consecutive months pursuant to the case plan.

{¶19} Furthermore, the record provides considerable evidence that Tammy failed to make any efforts to stabilize her mental health as required by the case plan. Tammy was diagnosed with bi-polar disorder as a teenager. MCCSB provided Tammy with transportation vouchers so that she could attend counseling sessions to obtain the prescription medications necessary for the stabilization of her bi-polar disorder. Tammy attended two sessions—one in June and one in July of 2007—with a counselor, Cindy Wall, at the Marion Area Counseling Center who testified at the hearing. After completing an initial intake interview of Tammy, Wall recommended a minimum of intensive outpatient level of care relating to Tammy's substance abuse and a mental health assessment to determine the appropriate medications to be prescribed to Tammy as a course of treatment for her bi-polar disorder. Wall testified that a full intake of Tammy was never completed because Tammy failed to return to the Counseling Center after the second session.[4]

{¶20} As for R.C. 2151.414(E)(4), the court found that Tammy failed to consistently attend scheduled visits with R.S., characterizing her visitation as "sporadic." Further, the court found that in one instance Tammy specifically arranged a visitation with R.S.; however she failed to show at the location on the

---

[4] Tammy, for her part, testified that she was unable to attend the counseling sessions because the sessions only occurred from 2:00 to 4:00 and operated on a first-come, first-served basis. She further explained that the bus stopped running at 4:30 and she was afraid that her session may not be finished before the last bus ran and thus, her fear of being stranded at the center prevented her from continuing with the counseling.

requested date. The record also indicates that Tammy did not exercise visitation with R.S. for ten months from July 2007 to May 2008. At a hearing held on December 11, 2008, the caseworker testified that Tammy had exercised only sixteen of the thirty-one opportunities that she had to visit with R.S. Furthermore, the record indicated that Tammy failed to make any contribution to the court-ordered child support obligation.

{¶21} McGary, R.S.'s biological father, also testified that he thought it would best for R.S. to remain in the foster home where he had become accustomed to living. McGary explained that his age, of 64-years-old, played a significant role in his stated position regarding his custody of R.S. McGary further stated that he wanted to be a part of R.S.'s life via visitation with R.S. at his foster home, but did not think it was best for R.S. for him to retain parental rights or custody.

{¶22} Based on the foregoing, we conclude that the trial court's findings support the trial court's determination by clear and convincing evidence that R.S. cannot or should not be placed with either Tammy or McGary within a reasonable time and that such a determination was not against the manifest weight of the evidence. See *In re Schaefer*, 111 Ohio St.3d at 504 (conducting a similar review of the R.C. 2151(E)(1),(4) factors). We note that Tammy contends that this determination was not supported by clear and convincing evidence because the trial court did not specifically state the finding. Instead, the court stated:

> **The Court cannot accept this recommendation as Mother has overwhelmingly demonstrated a lack of commitment to both her life style and her child,** *and additional time will not save or help Mother.*

**{¶23}** As this Court has stated previously, "the failure of the trial court to use the statutory language 'the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents' is not a per se violation of the statutory criteria as long as the judgment entry granting permanent custody supports such conclusion." *In re K.M*, 3rd Dist. Nos. 9-09-29, 9-09-30, 2009-Ohio-6719,¶ 14 citing *In re Curtis*, 2000-Ohio-1725 *4. Although we note that, while not expressly required by the statute, the better practice would be for the trial court to enter a finding that more closely follows the language provided in the statute. However, the absence of the statutory language does not vitiate the trial court's findings in this case.

**{¶24}** As for the second prong of the permanent custody test, in determining the best interest of a child, a trial court is to consider all relevant factors, including, but not limited to, the five under R.C. 2151.414(D)(1) which include:

> **(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;**

**(b)   The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;**

**(c)   The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;**

**(d)   The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;**

**(e)   Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.**

**{¶25}** Furthermore, this Court has held "that in rendering its judgment, the trial court must either specifically address each of the required considerations set forth in R.C. 2151.414(D) in its judgment entry, *or otherwise provide some affirmative indication in the record that the court has considered the specific factors listed in R.C. 2151.414(D)*." *In re D.H.*, 3d. Dist. No. 9-06-57, 2007-Ohio-1762, ¶21.

**{¶26}** In the instant case, the trial court expressly found that it would be in R.S.'s best interests to be placed in the permanent custody of MCCSB pursuant to R.C. 2151.414.  Moreover, the trial court provided an affirmative indication that it

considered the statutory factors listed in R.C. 2151.414(D)(1). Specifically, the trial court addressed the GAL's report, filed on the behalf of two-year-old R.S., in its judgment entry granting permanent custody to MCCSB and stated:

> **The Guardian Ad Litem recommends that the Motion of the Marion County Children's Services be denied. The Guardian Report recognizes the problems Mother has with her life, i.e— lack of employment; no stable housing; many incarcerations and legal criminal problems and illegal drug abuse. The Guardians' only basis for his recommendation is that Mother should be given more time to comply. The Court cannot accept this recommendation as Mother has overwhelmingly demonstrated a lack of commitment to both her life style and her child, and additional time will not save or help Mother.**

(J.E., Jun.19, 2009, p.3).

**{¶27}** In addition to filing his report, the GAL also testified as to the basis of his recommendation. Specifically, the GAL believed that R.S. could be returned to Tammy's custody within a period of six months or less provided that she takes certain steps which include the following: (1) complete a mental health and drugs and alcohol assessment; (2) comply with any recommended counseling; (3) take medication as prescribed; and (4) have more extensive unsupervised parenting time with R.S. (GAL report, p.9). With the exception of the fourth step, each of the steps listed above were already included in the case plan with which

Tammy failed to comply.[5] As for the fourth step, the GAL based his assessment on the interactions between Tammy and R.S. that he had watched via recordings made by MCCSB. However, the GAL testified that he did not personally observe Tammy with R.S., and that he only had one encounter with R.S. which involved a meeting at a local church with R.S. and his foster mother.

{¶28} In the past we have stated the weight to be given to a guardian ad litem report is always within the prerogative of the trial court. However, when the trial court renders a decision which goes against the specific recommendation of the guardian ad litem, the trial court must at least address the reasons for doing so. *In re D.H.*, 3d. Dist. No. 9-06-57, 2007-Ohio-1762, ¶22. Here, the trial court explicitly stated its reasons for not following the recommendations contained in the GAL report. Furthermore, the testimony elicited before the court provides ample support of the trial court's final determination and as such, we conclude that the trial court's finding that it would be in R.S.'s best interest to be placed in the permanent custody of MCCSB was supported by clear and convincing evidence and was not against the manifest weight of the evidence.

{¶29} Further, we note that the dissent contends that the trial court's

---

[5] The record indicates that Tammy initially had unsupervised, off-site, visitation with R.S. However, a series of no-calls/no-shows on scheduled visitation dates and Tammy's refusal to do a drug screen at MCCSB's request resulted in a modification of the visitations to be supervised and done at the site of the agency. It was not until May of 2008 that Tammy became more consistent in her visitations with R.S. by attending half of the scheduled visits.

judgment entry fails to comply with our prior case law because the trial court states it considered R.C. 2151.414—rather than stating R.C. 2151.414**(D)**—when it determined that it is in R.S.'s best interest to grant permanent custody to MCCSB.  In support of its contention, the dissent primarily relies on the first clause in our holding in *In re D.H.*, which states that "in rending its judgment the trial court must *either* specifically address each of the required considerations set forth in R.C. 2151.414(D) in its judgment entry.…"  However, the dissent overlooks the language contained in the same sentence which states a second alternative "or otherwise provides *some affirmative indication in the record that the court has considered the specific factors listed in R.C. 2151.414(D)*."

{¶30} By overlooking this specific language, the dissent essentially finds that unless a judgment entry granting permanent custody specifically references Division (D), the judgment of the trial court must be reversed regardless of the findings the court has made after providing some affirmative indication that it considered the proper statutory requirements.  In doing so, the dissent cites a number of cases previously decided by this Court to support its assertion.  However, none of them stand for this proposition and each is readily

distinguishable from the case sub judice.[6]

{¶31} Rather, the present case falls squarely within this Court's decision in *In the Matter of Kayden Haller*, 3rd Dist. No. 16-08-16, 2009-Ohio-545. In that case, we found that the trial court's statement in its judgment entry that it "considered the factors set forth in Section 2151.414 of the Ohio Revised Code[,]" coupled with its findings of fact provided *some affirmative indication* that it properly considered the factors of Division (D), despite the fact that the court did not specifically reference its finding of fact to the applicable R.C. 2151.414(D) factors. *Id*. at ¶ 15.

{¶32} Here, not only did the trial court expressly state that it considered R.C. 2151.414 in its judgment entry when it made its best interest determination, but the trial court also provided *an affirmative indication* that it considered R.C. 2151.414(D)(1) when it discussed the GAL's report in the same judgment entry. Accordingly, we find that the trial court fully complied with our prior case law in rendering its decision with respect to the best interest factors in R.C. 2151.414(D) and as such we find the trial court's determination with regard to this finding was

---

[6] In *In re D.H.* we reversed the trial court's judgment because even though the trial court made a number of factual findings, none of those findings demonstrated that the court had considered the factors enumerated in R.C. 2151.414(D). Likewise, in *In re McMillin*, we reversed the grant of permanent custody because the trial court made *no indication* in its judgment entry that it considered *any* statutory factors listed in R.C. 2151.414. In both *In re Matthews* and *In re Robinson* we affirmed the trial court's judgment to grant permanent custody because each respective judgment entry discussed specific factors listed in R.C. 2151.414(D). Finally, our analysis *In re Lawson* focused on the application of R.C. 2151.414(E) and thus in not relevant to the present discussion.

proper.

**{¶33}** Based on the foregoing, both of Tammy's assignments of error are overruled and the judgment granting permanent custody of R.S. to MCCSB is affirmed.

*Judgment Affirmed*

**PRESTON, J., concurs.**

**/jlr**

**WILLAMOWSKI, P.J., dissents.**

**{¶34}** I dissent from the majority for the following reason. The termination of parental rights affects a fundamental right of the parents to raise their own children. This court has repeatedly held that the trial court must consider each and every factor set forth in R.C. 2151.414(D).

> **[I]n our view, it is not sufficient for the trial court to simply rely on the appellate court to review the factual record or narrative and then make the necessary inferences to determine whether the trial court must have considered each of the required statutory factors.**
>
> **Accordingly, we hold that in rendering its judgment, the trial court must either specifically address each of the required considerations set forth in R.C. 2151.414(D) in its judgment entry, or otherwise provide some affirmative indication in the record that the court has considered the specific factors listed in R.C. 2151.414(D).**

*In re D.H.*, 3d Dist. No. 9-06-57, 2007-Ohio-1763, ¶20-21.   See also *In re McMillin*, 3d Dist. No. 9-06-59, 9-06-60, 2007-Ohio-2046; *In re Robinson*, 3d Dist. No. 1-08-24, 2008-Ohio-5311; *In re Matthews*, 3d Dist. No. 9-07-28, 9-07-29, 9-07-34, 2008-Ohio-276; and *In re Lawson*, 3d Dist. No. 9-06-67, 2007-Ohio-4939.   The judgment entry in this case does not indicate that the trial court considered the specific statutory factors in question.  I agree with the majority that there are numerous facts on the record from which the trial court could address the factors.  However, the trial court did not do so.  Instead, this court is doing exactly what it has previously said it should not do.  The majority is sifting through the evidence to find facts to support the conclusions of the trial court and relying on the trial court's statement that it considered the GAL's report which touched on some of the factors and from which the trial court reached a different conclusion.  The majority also points to the GAL's testimony concerning the factors in R.C. 2151.414(E), all of which was before the trial court.  By piecing together parts of the testimony and inferring conclusions from them, they conclude that this is "good enough."  The termination of parental rights affects a substantial right and is not to be taken lightly.  "Good enough" should not be sufficient for terminating a substantial right.  The statute sets forth five factors that shall be considered by the trial court in R.C. 2151.414(D).  The trial court should be required in these cases to clearly comply with the statutes and not rely

-21-

on this court to infer that they did so by searching the record for support. For this reason, I would follow our prior rulings, reverse the judgment of the trial court and remand it for further proceedings.