[Cite as *Spears v. Bush*, 2010-Ohio-3547.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

BRITTANY SPEARS,

    PLAINTIFF-APPELLANT,          CASE NO. 9-10-05

    v.

ERIC BUSH, ET AL.,

                                **O P I N I O N**

    DEFENDANTS-APPELLEES.

Appeal from Marion County Common Pleas Court
Trial Court No. 2009-CV-0325

**Judgment Affirmed**

Date of Decision: August 2, 2010

APPEARANCES:

    *Charles R. Hall, Jr. and David K. Goodin* for Appellant

    *J. Stephen Teetor and Jessica K. Philemond* for Appellees

**PRESTON, J.**

{¶1} Plaintiff-appellant, Brittney Spears (hereinafter "Spears"), appeals the Marion County Court of Common Pleas' judgment dismissing her civil complaint against defendant-appellees, Eric Bush, Executive Director of Marion County Children's Services Board, in his official and individual capacities, (hereinafter "Bush"), Marion County Children's Services Board (hereinafter "MCCSB"), and Marion County Children's Services Board, in their official and individual capacities (collectively "defendants"). For the reasons that follow, we affirm.

{¶2} The facts of the underlying child custody case are familiar to this Court as that case has twice been heard on appeal. *In re D.H.*, 3d Dist. No. 9-06-57, 2007-Ohio-1762; *In re D.H.*, 3d Dist. No. 9-08-01, 2008-Ohio-4304. The basic facts gleaned from our prior cases are these.

{¶3} On July 21, 2003, sixteen-year-old Spears gave birth to D.H. D.H.'s father is Brandon H. On February 7, 2004, Spears and D.H. were removed from Spears' home and placed into the same foster home in Piqua, Ohio until July 2004 when they were transferred into the Rostorfer's foster home in Marion.

{¶4} On September 16, 2004, MCCSB filed a complaint alleging that both Spears and D.H. were dependent and neglected children. On November 23, 2004, a pretrial hearing was held wherein the parties stipulated that Spears and

D.H. were dependent. On September 27, 2004, a case plan was approved, which required that Spears: attend school, refrain from illegal substances, obtain mental health counseling, and obtain employment.

{¶5} Between May and August 2005, the parental rights of Spears' mother were terminated. During this same time, a case worker, Ms. Umoh, noted that Spears was doing well and could receive custody of D.H. in September 2005, but this date was revised because Spears could not find suitable housing.

{¶6} On August 24, 2005, Spears was emancipated and moved out of the Rostorfer foster home to live in the Fairview Apartments in Marion, Ohio. Spears subsequently moved in with her boyfriend at 284 Windsor Street in Marion, Ohio.

{¶7} Shortly after her emancipation Spears' mentor, Ms. Dale, alleged to MCCSB that Spears was having alcohol parties in her apartment. As a result of Dale's allegations, on September 26, 2005, MCCSB installed a new case plan revoking Spears' unsupervised visits with D.H. and replacing these with supervised visits. After that, Spears regressed rapidly. She lost her job, dropped out of school, pled to two (2) underage consumption charges (10/18/05 & 11/21/05), and pled to two (2) charges of obstructing official business in which it was alleged that she had not allowed police into her apartment.

{¶8} On January 19, 2006, MCCSB filed a motion for permanent custody of D.H. pursuant to R.C. 2151.413. On May 1 and July 6, 2006, hearings were

held on the motion with both parents appearing with counsel. MCCSB presented seven (7) witnesses; Spears, Brandon, and Spears' mother also testified.

{¶9} On July 28, 2006, the GAL submitted an eighteen (18)-page report recommending that Spears be given another opportunity and that the motion for permanent custody be denied.

{¶10} On September 21, 2006, trial court granted MCCSB's motion for permanent custody. On October 19, 2006, Spears and Brandon both appealed.

{¶11} On April 16, 2007, this Court reversed finding that the trial court did not address all of the R.C. 2151.414(D) factors, namely (1), (2), and (4), and that the trial court did not give any reason(s) for disregarding the GAL report. *In re D.H.*, 2007-Ohio-1762. On that same day, Spears filed a motion for modification of custody indicating that she would like to visit D.H. On July 19, 2007, the trial court set the matter for pretrial on July 25, 2007, but the record contains no information as to what happened at the pretrial. What is clear is that no modification order was ever issued.

{¶12} On August 10, 2007, GAL Diequez filed a report noting that he had visited Spears' home on August 2, 2007. Diequez noted the following in his report: Spears was living in a home owned by Oney, the father of Spears' second child, E.O., rent free in lieu of child support for E.O.; Spears was employed at Field Container in Marion, earning $8.90/hr. for 40 hrs./week with occasional

overtime; Spears had appropriate care for E.O. while working; Spears was current with her bills; Spears had no law enforcement involvement for the past sixteen (16) months; Spears had adequate food in the home; and Spears expressed her desire to visit D.H.. Based upon his observations, the GAL ultimately recommended supervised visits with D.H..

**{¶13}** On August 24, 2007, the trial court held a hearing to address the GAL reports of Minter and Diequez. Minter expressed that he held the same opinion that he had offered at the first hearing on MCCSB's motion for permanent custody—that the motion for permanent custody should be denied, and he attributed Spears' past bad acts to immaturity.

**{¶14}** On September 25, 2007, a new hearing was held on MCCSB's motion for permanent custody.

**{¶15}** On October 10, 2007, GAL Diequez submitted his final report with the trial court wherein he recommended that: Spears be given supervised visitation with D.H.; D.H. remain in the Rostofer's foster home while said visitation occurred; and the case be periodically reviewed.

**{¶16}** On December 12, 2007, the trial court granted MCCSB's motion for permanent custody. Thereafter, Spears appealed, and, on August 25, 2008, this Court reversed again. *In re D.H.*, 2008-Ohio-4304.

{¶17} After the second reversal, MCCSB filed a motion to return D.H. to Spears with a protective supervision order. On October 22, 2008, the trial court granted this motion. D.H. is currently in Spears' custody.

{¶18} On April 17, 2009, Spears filed a complaint in Marion County Court of Common Pleas against Bush and MCCSB for alleged wrongful acts they committed in handling the child custody case. (Doc. No. 1).

{¶19} On July 1, 2009, defendants filed an answer pursuant to a stipulation of the parties for an extension of time. (Doc. Nos. 5-6). On October 7, 2009, defendants filed a Civ.R. 12(C) or, alternatively, Civ.R. 56 (C) motion. (Doc. No. 9). On November 6, 2009, Spears filed a memorandum in opposition. (Doc. No. 11). On November 19, 2009, defendants filed a reply. (Doc. No. 12).

{¶20} On January 6, 2010, the trial court dismissed complaint. (Doc. No. 13). On January 21, 2010, Spears filed a notice of appeal. (Doc. No. 14).

{¶21} Spears now appeals raising two assignments of error for our review.

### ASSIGNMENT OF ERROR NO. I

**THE TRIAL COURT ERRED BY NOT ADDRESSING THE MARION COUNTY CHILDREN'S SERVICES BOARD UNKNOWN EMPLOYEES IN GRANTING THE APPELLEES' MOTION FOR SUMMARY JUDGMENT.**

{¶22} In her first assignment of error, Spears argues that the trial court's judgment entry is not a final appealable order pursuant to Civ.R. 54(B) because it did not address the "unknown employees" of MCCSB. We disagree.

**{¶23}** This Court has already determined that the trial court's January 6, 2010 judgment entry is a final appealable order pursuant to R.C. 2505.02(B)(1) since it dismissed the complaint in its entirety, and thereby, "in effect determine[d] the action." *Spears v. Bush*, et al. (Apr. 14, 2010), 3d Dist. No. 9-10-05. This ruling is now law of the case, and therefore, Spears' argument lacks merit.

**{¶24}** Spears' first assignment of error is overruled.

## ASSIGNMENT OF ERROR NO. II

**THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT.**

**{¶25}** In her second assignment of error, Spears argues that the trial court erred in granting appellees summary judgment based upon Chapter 2744 sovereign immunity. Specifically, Spears argues that R.C. 2744.02(B)(5)'s exception to immunity applies as to MCCSB because: it failed to make attempts at reunifying D.H. with Spears as part of its case plans as required by R.C. 2151.412(F); and R.C. 2151.412(E)(1) imposes civil liability upon MCCSB, as a "party" bound by the terms of a journalized case plan for failing to attempt reunification of a child in its temporary custody. (Appellant's Brief at 9). With respect to Bush, Spears argues that, through his acts or omissions, he recklessly attempted to prevent reunification of D.H. with her and is, therefore, liable under R.C. 2744.03(A)(6)(b). We disagree.

**{¶26}** As an initial matter, we note that both parties have indicated in their briefs to this Court that the trial court granted summary judgment pursuant to Civ.R. 56(C) and argued summary judgment standards on appeal. (Appellant's Brief at 5-6, 12); (Appellees' Brief at 5, 8, 10). Defendants filed a motion for judgment on the pleadings pursuant to Civ.R. 12(C) or, alternatively, for summary judgment pursuant to Civ.R. 56(C). (Doc. No. 9). Although the trial court's judgment entry does contain two statements[1] *in the alternative* concerning Spears' lack of "evidence," reading the trial court's judgment entry in its totality leads us to conclude that the trial court dismissed the case pursuant to Civ.R. 12(C). (Doc. No. 13). The record in this case also appears to indicate that the trial court's disposition was based upon Civ.R. 12(C) since *neither* party has filed any evidence of the types listed in Civ.R. 56(C) or (E)—aside from the pleadings and the journal entries attached thereto—in support of *or* in opposition to the motion. Therefore, this Court will review the trial court's "dismissal" under Civ.R. 12(C) standards and not Civ.R. 56(C) standards.

**{¶27}** "[T]he standards for Civ.R. 12(B)(6) and (C) motions are similar, but Civ.R. 12(C) motions are specifically for resolving questions of law[.]" *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664

---

[1] The trial court stated the following in its judgment entry: "Plaintiff not only presents no evidence of a 'disposition to perversity' by Eric Bush, but the Complaint alleges no factual basis for such an allegation. * * * Despite the conclusory allegations, no factual misconduct is specifically alleged as to Mr. Bush, nor did Plaintiff offer any evidence of the same in her Memo Contra." (Jan. 6, 2010 JE, Doc. No. 13).

N.E.2d 931, citing *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 166, 297 N.E.2d 113. Dismissal is appropriate under Civ.R. 12(C) only when a court: (1) construes the material allegations in the complaint, along with all reasonable inferences therefrom, in favor of the nonmoving party as true; and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *Pontious*, 75 Ohio St.3d at 570, citing *Lin v. Gatehouse Constr. Co.* (1992), 84 Ohio App.3d 96, 99, 616 N.E.2d 519. On the other hand, a court need not assume the truth of conclusions, which are not supported by factual allegations. *Garofalo v. Chicago Title Ins. Co.* (1995), 104 Ohio App.3d 95, 104, 661 N.E.2d 218, citing *Mitchell v. Lawson Milk Co.* (1998), 40 Ohio St.3d 190, 192-93, 532 N.E.2d 753 (noting that the complaint's *facts*, not its *conclusions*, determine a Civ.R. 12(B)(6) motion). Appellate review of a judgment on the pleadings is de novo. *Trinity Health Sys. v. MDX Corp.*, 180 Ohio App.3d 815, 2009-Ohio-417, 907 N.E.2d 746, ¶19; *Reznickcheck v. North Cent. Correctional Institution*, 3d Dist. No. 9-07-22, 2007-Ohio-6425, ¶11.

{¶28} Chapter 2744 governs political subdivision liability and immunity. To determine whether a political subdivision is entitled to immunity under Chapter 2744, a reviewing court must engage in a three-tiered analysis. *Hubbard v. Canton Cty. Schl. Bd. Of Ed.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶10, citing *Cater v. Cleveland* (1998), 83 Ohio St.3d 24, 28, 697 N.E.2d 610. First, the

court must determine whether the entity claiming immunity is a political subdivision and whether the alleged harm occurred in connection with either a governmental or proprietary function. R.C. 2744.02(A)(1); *Hubbard*, 2002-Ohio-6718, at ¶10. The general rule is that political subdivisions are not liable in damages. Id. If the entity is a political subdivision entitled to immunity, then the court must determine whether any of the R.C. 2744.02(B) exceptions to immunity apply. *Hubbard*, 2002-Ohio-6718, at ¶12, citing *Cater*, 83 Ohio St.3d at 28. If any of the R.C. 2744.02(B) exceptions apply, then the political subdivision can reinstate its immunity by showing that a R.C. 2744.03 defense applies. *Cater*, 83 Ohio St.3d at 28. If none of the R.C. 2744.02(B) exceptions to immunity apply, however, R.C. 2744.03's defenses need no consideration. *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation and Developmental Disabilities*, 150 Ohio App.3d 383, 2002-Ohio-6344, 781 N.E.2d 1034, ¶26, citing *Cater*, 83 Ohio St.3d at 28.

{¶29} MCCSB is a political subdivision performing a governmental function. R.C. 2744.01(C)(2)(m), (o); *Rankin v. Cuyahoga Cty. Dept. of Children and Family Servs.*, 118 Ohio St.3d 392, 2008-Ohio-2567, 889 N.E.2d 521, ¶16.

{¶30} R.C. 2744.02(A)(1) provides, in pertinent part, "[e]xcept as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any

act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(B)(5) provides, in relevant part:

> **\* \* \* a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code \* \* \*. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.**

**{¶31}** Spears argues that MCCSB is liable via R.C. 2744.02(B)(5) by virtue of the civil liability imposed under R.C. 2151.412(E)(1) for MCCSB's failure to make efforts at reunification under R.C. 2151.412(F). We disagree. R.C. 2151.412 provides, in pertinent part:

> **(E)(1) All parties, including the parents, guardian, or custodian of the child, are bound by the terms of the journalized case plan. A party that fails to comply with the terms of the journalized case plan** *may be held in contempt of court.* **\* \* \***

> **(F)(1) All case plans for children in temporary custody shall have the following general goals: \* \* \***

> **(b) To eliminate with all due speed the need for the out-of-home placement so that the child can safely return home.**

(Emphasis added). Even assuming that MCCSB is a "part[y]" for purposes of R.C. 2151.412(E)(1) and subject to contempt of court, the statute does not

"expressly impose[]" civil liability as R.C. 2744.02(B)(5) requires. Cf. *In re J.P.*, 3d Dist. Nos. 5-06-52, 5-06-53, 2007-Ohio-1903, ¶68 (inferring that Hancock County Job and Family Services, Children Protective Services Unit (CPSU) could be held in contempt under R.C. 2151.412(E)(1) for its failure to comply with the case plan); *Marshall v. Montgomery Cty. Children's Servs. Bd.* (2001), 92 Ohio St.3d 348, 352-53, 750 N.E.2d 549 (R.C. 2151.421(F)(1) does not subject children services board to civil liability via R.C. 2744.02(B)(5) for its failure to investigate reports of child abuse or neglect). At most, R.C. 2151.412(E)(1) imposes a "responsibility or mandatory duty" upon MCCSB to comply with the terms of the journalized case plan, which is insufficient to meet R.C. 2744.02(B)(5)'s exception to immunity. *O'Toole v. Deniham*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶68, citing *Butler v. Jordan* (2001), 92 Ohio St.3d 354, 357, 750 N.E.2d 554. Therefore, MCCSB's sovereign immunity under R.C. 2744.02(A)(1) is not removed by operation of R.C. 2744.02(B)(5)'s exception.

**{¶32}** Since Spears has failed to demonstrate that any of the R.C. 2744.02(B)(5) exceptions to sovereign immunity apply, we need not discuss any of the R.C. 2744.03 defenses, and Spears complaint against MCCSB was properly dismissed as a matter of law. *Estate of Ridley*, 2002-Ohio-6344, at ¶26, citing *Cater*, 83 Ohio St.3d at 28; *Rankin*, 2008-Ohio-2567, at ¶32; *O'Toole*, 2008-Ohio-2574, at ¶71.

**{¶33}** With respect to Bush, Spears argues that, through his acts or omissions, he recklessly attempted to prevent reunification of D.H. with her and is, therefore, liable under R.C. 2744.03(A)(6)(b).

**{¶34}** R.C. 2744.03(A)(6) provides, in pertinent part: "* * * the employee is immune from liability unless one of the following applies: (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" The facts must demonstrate that the employee acted with a "perverse disregard of a known risk" in order for his or her actions to be "reckless" under R.C. 2744.03(A)(6)(b). *O'Toole*, 2008-Ohio-2574, at ¶73, citing *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31. See, also, *McGuire v. Lovell* (1999), 85 Ohio St.3d 1216, 1219, 709 N.E.2d 841 (Moyer, C.J., dissenting); *Jackson v. Butler Cty. Bd. of Cty. Commrs.* (1991), 76 Ohio App.3d 448, 454, 602 N.E.2d 363 ("we recently held that the term 'reckless' as used in R.C. 2744.03(A)(6)(b) means a perverse disregard of a known risk"). In addition, to be considered "reckless," "the actor must be conscious that his conduct will in all probability result in injury," and such conduct must "demonstrate a disposition to perversity." *O'Toole* at ¶¶74-75, citing *Fabrey*, 70 Ohio St.3d at 356.

**{¶35}** The only substantive *factual* allegations against Bush, specifically, was that he was "the executive director of [MCCSB] * * * [and] was a driving

force in the Plaintiff's claims in both his official and individual capacities."

(Complaint, Doc. No. 1, at ¶7).  The material allegations of the complaint

generally are these:

> **The Third District Court of Appeals noted that the Board's brief in support of its position [sic] the Board erroneously claimed that the Plaintiff was involved in drug trafficking which the Board knew that it was false.**
> **The Board provided the trial court with its memorandum which was the source of all the findings that are contrary to the evidence as because it contained numerous incorrect statements that have no basis in the record and completely failed to consider the additional evidence presented at the September 2007 hearing including that offered by the Board's own employee.**
> **The Board in its memorandum to the trial court misstated the evidence and alleged that the Plaintiff was charged with drug trafficking, had no employment, and was using alcohol in spite of the fact that no evidence of these claims was presented at the hearing and undisputed evidence to the contrary was presented.**
> **The Board made some effort to help Brittany prior to the filing of the motion for permanent custody in 2006 but refused to make any efforts since then including after the reversal and remand of the prior judgment from Third District Court of Appeals.**
> **The Third District Court of Appeals expressed its concern about the general attitude of the Board in regards to the Plaintiff's case.**
> **The Third District Court of Appeals stated that the Board misrepresented the timing of various events and stated that the Plaintiff had changed nothing in her life and was still in the same position as at the time of the last hearing in July which the Court said was not true.**

(Id., at ¶¶20-25).

{¶36} Construing these material allegations in a light most favorable to Spears, we find that Spears can prove no set of facts that would entitle her to relief. That *this Court* "noted" or "stated" in our previous decision that MCCSB's memorandum in support of its motion for permanent custody "contain[ed] numerous incorrect statements that have no basis in the record" does not state a cause of action against Bush. *In re D.H.*, 2008-Ohio-4304, at ¶41, fn. 9. The complaint does not affirmatively allege that Bush, or even MCCSB, recklessly made these false statements; rather the complaint alleges that *this Court* "noted" or "stated" such in our prior opinion. (Complaint, Doc. No. 1, ¶20). The complaint simply fails to allege any conduct *by Bush*, specifically, that could demonstrate a "perverse disregard of a known risk" or "a disposition to perversity." *O'Toole*, 2008-Ohio-2574, at ¶¶73-75, citing *Fabrey*, 70 Ohio St.3d at 356. As such, Bush is entitled to judgment as a matter of law under R.C. 2744.03(A)(6)(b).

{¶37} Spears' second assignment of error is, therefore, overruled.

{¶38} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**