[Cite as *Toros v. Cuyahoga Cty. Bd. of Dev. Disabilities*, 2013-Ohio-4601.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99637

---

# NICHOLAS TOROS, ADMINISTRATOR

### PLAINTIFF-APPELLANT

vs.

# CUYAHOGA CTY. BD. OF DEV. DISABILITIES, ET AL.

### DEFENDANTS-APPELLEES

---

### JUDGMENT:
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-763903

**BEFORE:**  Blackmon, J., Celebrezze, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:**  October 17, 2013

**ATTORNEYS FOR APPELLANT**

Paul W. Flowers
Paul W. Flowers Co., L.P.A.
Terminal Tower, 35th Floor
50 Public Square
Cleveland, Ohio 44113

David R. Grant
Plevin & Gallucci Co., L.P.A.
55 Public Square
Suite 2222
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEES**

Kenneth A. Calderone
Michael Ockerman
Hanna, Campbell & Powell, L.L.P.
3737 Embassy Parkway
Suite 100
Akron, Ohio 44333

PATRICIA ANN BLACKMON, J.:

**{¶1}** Appellant Nicholas Toros, Administrator of the Estate of Florence Toros ("the estate"), appeals the trial court's granting of summary judgment in favor of the Cuyahoga County Board of Developmental Disabilities ("CBDD") and its employees Dorothy Hamlett, R.N., Laura Kubulins, Ron Duke, Bryan O'Connor, and Lashanda Bryant (n.k.a. Lashanda Scales) ("employees") and assigns the following three errors for our review:

> I.   The trial judge abused his discretion, to plaintiff-appellant's considerable detriment, by allowing defendants-appellees to expand the scope of the motion for summary judgment to include the individual defendants only after the memorandum in opposition had been submitted.
>
> II.   The trial judge erred, as a matter of law, by granting summary judgment on the basis of new arguments that were raised only after plaintiff-appellant's memorandum were raised only after plaintiff-appellant's memorandum in opposition was filed.
>
> III.   The trial judge erred, as a matter of law, by granting summary judgment despite the disputed issues of fact in the record.

**{¶2}** Having reviewed the record and pertinent law, we affirm the trial court's decision.   The apposite facts follow.

## Facts

**{¶3}** In November 2009, Florence Toros ("Toros"), a mentally challenged adult, was diagnosed with tongue cancer.   She underwent surgery in December 2009 to remove the tumor and to reconstruct her tongue.   She spent 11 days in the hospital where she was fed via feeding tubes.   She was transferred to a nursing facility for further rehabilitation.

During this time, she was fed with a feeding tube that led directly to her stomach. Once the feeding tube was removed, a barium swallow test was performed at the Cleveland Clinic that indicated that Toros could start eating regular food.

{¶4} Toros attended Maple Heights Adult Activity Center ("the Center") where she helped assemble products for various companies. She had been attending the facility since the early 1980s. The Center is operated under the auspices of the CBDD. The summer prior to Toros's return to the Center, Toros's mother met with the staff to discuss Toros's care, in light of her surgery. At the time of the meeting, the mother was still pureeing Toros's food, but told the staff that Toros was scheduled to take a barium swallow test to determine if she was ready for solid food. The mother said she would update the staff regarding the results. However, as a result of this meeting, Toros's Individual Service Plan ("ISP") stated that her food had to be pureed.

{¶5} By the time Toros returned to the Center in October 2010, she was cleared to eat solid food because she had passed the barium swallow test. According to Toros's mother, Toros had been eating such things as hamburgers and pretzels at home with no problem. Nurse Dorothy Hamlett, who was assigned to Toros's ISP team, confirmed with Toros's doctor that she had no dietary restrictions.

{¶6} Toros's mother was in charge of preparing a lunch for Toros to take with her to the Center. This would typically include a sandwich that would be cut into four squares, fruit, and small cookies. Toros would bring the lunch in her purse. Her mother also provided her with money to purchase additional food from the vending machines at

snack time. Because Toros had a history of sneaking food, the staff would make sure she put her lunch away, and they would keep her snack money until she needed it at break time.

{¶7} Lashaunda Scales, an Adult Program Specialist, was in charge of Toros's group on November 22, 2010. Toros had been back at the Center since October 4, 2010. Scales stated in her deposition that Toros arrived at the Center at 7:30 a.m. Like usual, Scales instructed Toros to put her coat and her packed lunch in the work area locker. That day, her lunch consisted of a salami sandwich, two bananas, and a bag of little cookies. Toros gave Scales her snack money to be used at the vending machines at break time.

{¶8} Between 8:15 a.m. and 8:30 a.m., Toros asked to use the restroom. She had her coat and purse with her. Scales told Toros to leave her things in the work area. In response, Toros removed her coat, but kept her purse. Scales instructed Toros to put the purse away. Toros then attempted to use the restroom furthest away from the work area. However, Scales redirected her to a closer bathroom and watched to see that Toros actually went to the area of the bathroom. She then watched until Toros left the bathroom. Toros smiled at her as she walked past. Scales then left the area to make copies while Toros proceeded to the drinking fountain.

{¶9} Bryan O'Connor, an Adult Program Specialist at the Center, noticed Toros proceed to the water fountain. As she bent over to drink, he observed her having what appeared to be a seizure. She fell on her back and began jerking. O'Connor and

Dorothy Hamlett, a staff nurse, provided CPR and called 911. EMS arrived and took over CPR while transporting Toros to the hospital. At the hospital, food, which appeared to be peanut butter was discovered in Toros's airway. She died at the hospital two days later. Although Toros's sandwich and banana were found in her purse, the bag of little cookies was never found.

{¶10} On her behalf, Toros's estate filed a wrongful death action against the CBDD and its employees. The CBDD and its employees filed a motion for summary judgment arguing sovereign immunity protected them from liability. The trial court granted the motion for summary judgment in a four-page opinion.

## Amendment of Motion for Summary Judgment

{¶11} We will address the first and second assigned errors together because they both concern the estate's contention that the trial court erred in ruling on procedural matters. The estate argues that the trial court erred by allowing the CBDD and its employees to file an amended motion for summary judgment after the estate had already responded to the original motion for summary judgment.[1] The estate also argues the trial court erred by not striking the CBDD's reply brief because it set forth a new argument not presented in the CBDD's original or amended motions for summary judgment.

---

[1] At oral argument there appeared to be confusion whether the original motion that the estate responded to was struck for being filed out of rule. There was actually another motion for summary judgment filed prior to this summary judgment, which was struck by the court for being filed out of rule. However, it was subsequently refiled with leave of court.

**{¶12}** The trial court did not err by allowing the motion for summary judgment to be amended. Our review of both the original and amended motions show minor changes. The only difference between the two is that the employees' names are included in the caption of the amended motion and on page 19 of the amended brief, the phrase "or its employees" was added twice so that the pertinent sentences read: "There is absolutely no evidence that Cuyahoga County Board of Developmental Disabilities *or its employees* consciously disregarded Ms. Toros's eating behavior." (Emphasis added.) And, "There is not evidence that the Cuyahoga County Board of Developmental Disabilities *or its employees* failed to exercise any care in supervising Ms. Toros and responding to her in her hour of need." (Emphasis added.) No other additional changes were made, nor was further analysis of the employees' liability added.

**{¶13}** These changes did not prejudice the estate because they did not create new arguments. Both the CBDD in its original motion for summary judgment and the estate in its response motion discussed the employees' conduct in resolving the immunity issue. Additionally, in the original motion for summary judgment, the CBDD argued on page 14 that "Without a doubt, each of these alleged 'failures' was within the discretion of defendant Cuyahoga County Board of Developmental Disabilities *and its employees*." (Emphasis added.) On page 15 of the original motion, the CBDD argued, "In addition, the *employees* themselves made discretionary decisions in creating Ms. Toros's ISP and AASP, whether to supervise Ms. Toros in the bathroom, and how to respond to Ms. Toros

when she suffered from an apparent seizure." (Emphasis added.) Thus, it is not as if the original motion completely ignored the employees' potential liability.

{¶14} Further, the estate attached to its brief in opposition a detailed affidavit by an expert along with an extensive expert report that addressed each of the employees' conduct and why the employees were not immune. Therefore, the estate addressed the immunity of the employees and was not prejudiced by the court's permitting the CBDD and its employees to file an amended motion for summary judgment.

{¶15} The estate also argues that by ruling on the amended motion for summary judgment 20 days after it was filed, the trial court deprived it of the ability to respond to the amended motion. The estate cites to Loc.R. 11(I), which provides that "Unless otherwise ordered by the Court, * * * a party opposing a motion for summary judgment made pursuant to civil rule 56 may file a brief in opposition with accompanying evidentiary materials (as permitted by civil rule 56 (c)) within thirty (30) days of service of the motion." Under the circumstances of this case, where the amended motion for summary judgment did not change the arguments contained within the original motion and where the estate provided abundant evidence regarding the employees' acts and addressed their liability in its original motion in opposition, we conclude the estate was not prejudiced by not having the opportunity to respond prior to the court's ruling.

{¶16} Also, the amended motion did not constitute a new motion that restarted the response time pursuant to Loc.R. 11(I). This court in *Cook v. Wal-Mart, Inc.*, 8th Dist. Cuyahoga No. 79451, 2002-Ohio-973, held that a court did not err by granting summary

judgment less than 30 days after the movant filed a supplemental motion to its motion for summary judgment because it did not constitute a "new motion starting a new time period for response." *Id.* at ¶ 7.

**{¶17}** The estate also contends that the trial court erred by not granting its motion to strike the CBDD's reply brief. The determination of a motion to strike is vested within the broad discretion of the trial court. *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 26. The estate contends the reply brief should have been struck because it raised an argument not raised in the amended motion for summary judgment. In its reply brief, the CBDD contended that the "Bill of Rights for Persons with Mental Retardation or Developmental Disability" contained in R.C. 5123.62 to 5123.64 did not expressly impose liability on it or its employees. Although this argument was not presented in the motion for summary judgment, the estate had raised this issue in its motion in opposition to the CBDD's motion for summary judgment. Thus, it was not a new argument to the estate. The estate could have asked for leave to file a surreply brief if it felt a response was necessary. By choosing instead to file a motion to strike the amended motion for summary judgment, the estate demonstrated that it had no new arguments to present. Accordingly, the estate's first and second assigned errors are overruled.

## Sovereign Immunity

**{¶18}** In the third assigned error, the estate contends the trial court erred by granting summary judgment in favor of the CBDD and its employees.

**{¶19}** We review an appeal from summary judgment under a de novo standard of review. *Baiko v. Mays*, 140 Ohio App.3d 1, 746 N.E.2d 618 (8th Dist.2000), citing *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987); *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 699 N.E.2d 534 (8th Dist.1997). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

**{¶20}** Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party.

**{¶21}** Determining whether a political subdivision is immune from tort liability pursuant to R.C. Chapter 2744 involves a three-tiered analysis. *Greene Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556-557, 2000-Ohio-486, 733 N.E.2d 1141. The first tier is the general rule that a political subdivision is immune from liability incurred in performing either a governmental function or proprietary function. *Id.* at 556-557; R.C. 2744.02(A)(1). However, that immunity is not absolute. R.C. 2744.02(B); *Cater v. Cleveland*, 83 Ohio St.3d 24, 28, 1998-Ohio-421, 697 N.E.2d 610.

**{¶22}** "The second tier of the analysis requires a court to determine whether any of the five exceptions to immunity listed in R.C. 2744.02(B) apply to expose the political subdivision to liability." *Id.* at 28. If any of the exceptions to immunity apply and no

defense in that section protects the political subdivision from liability, then the third tier of the analysis requires a court to determine whether any of the defenses set forth in R.C. 2744.03 apply, thereby providing the political subdivision a defense against liability. *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 9.

**{¶23}** The estate does not dispute that the CBDD qualifies as a "political subdivision" under R.C. 2744.01(F) and that the operation of facilities for the developmentally disabled is a "government function" pursuant to R.C. 2744.01(C)(2)(o). The estate, however, claims that the CBDD and its employees are not immune from liability because the exception to immunity as outlined in R.C. 2744.02(B)(5) applies.

**{¶24}** R.C. 2744.02(B)(5) provides that "a political subdivision is liable for injury, death, or loss to person or property when civil liability *is expressly* imposed upon the political subdivision by a section of the Revised Code." (Emphasis added.) The estate contends that R.C. 5123.62, which contains the "Bill of Rights for Persons with Mental Retardation or Developmental Disability," creates an exception to immunity because the General Assembly expressly imposed civil liability in R.C. 5123.64(B)(3) that a person with a developmental disability may take "appropriate action to ensure compliance with sections 5123.61 to 5123.64 of the Revised Code, including the filing of a legal action to enforce rights or to recover damages for violation of rights." The estate argues that by not providing Toros with a safe environment at the Center, the CBDD and its employees violated Toros's rights outlined in R.C. 5123.62 to 5123.64.

**{¶25}** We conclude that the statute does not specifically impose liability on the political subdivision but contains a general imposition of liability. The Ohio Supreme Court has held that the term "expressly" as used under R.C. 2744.02(B)(5) means "in direct or unmistakable terms: in an express manner: explicitly, definitely, directly." *Butler v. Jordan*, 92 Ohio St.3d 354, 357, 750 N.E.2d 554 (2001). A general imposition of liability is not sufficient. *See Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St.3d 455, 2009-Ohio-1250, 905 N.E.2d 606 (Landlord Tenant Act expressly imposes liability on landlords in general, but did not expressly impose it on the political subdivision of the LMHA). Similarly, in the instant case, R.C. 5123.64 creates a right to pursue civil liability, but does not specifically identify a political subdivision.

**{¶26}** The estate contends that in spite of the Supreme Court's opinion in *Moore*, in an earlier decision, *Campbell v. Burton*, 92 Ohio St.3d 336, 2001-Ohio-206, 750 N.E.2d 539, the Supreme Court had held that the imposition of general liability was sufficient. We disagree. In *Campbell*, the statute at issue was R.C. 2151.421, which imposes on certain persons a duty to report child abuse and neglect. The court held that because the violation of R.C. 2151.421 resulted in criminal liability, that liability was expressly imposed on employees of political subdivisions who had a mandatory duty to report the abuse. When *Campbell* was decided, however, R.C. 2744.05(B)(5) did not require that the statute impose "civil liability" as it does now. In 2003, two years after *Campbell* was decided, R.C. 2744.05(B)(5) was amended to abrogate *Campbell*. The amended statute clarified that exceptions pursuant to R.C. 2744.02(B)(5) must expressly

impose "civil liability," not criminal liability. The amended statute also clarified that, contrary to what was stated in *Campbell*, liability is not construed to exist merely because another statute imposes a "mandatory duty" on the political subdivision.

{¶27} The Ohio Supreme Court has since held in *Estate of Ridley v. Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities.*, 102 Ohio St.3d 230, 2004-Ohio-2629, 809 N.E.2d 2, that the "Bill of Rights for Persons with Mental Retardation or Developmental Disability" does not expressly impose liability on a subdivision. The estate contends we should not rely on *Ridley*, arguing that the plaintiff in that case conceded that liability was not expressly imposed, therefore, the Supreme Court did not consider the issue. However, merely because a party concedes an issue does not mean that courts must accept a clearly wrong concession. Therefore, by not correcting the plaintiff's concession to the fact that there was no express liability, the Supreme Court obviously agreed. The court, thus, went on to consider whether liability existed pursuant to the Enforcement Clause of the Fourteenth Amendment and held that it did not, stating as follows:

> Although the Enforcement Clause of the Fourteenth Amendment gives Congress the "power to enforce, by appropriate legislation, the provisions of this article," an act of Congress is not "a section of the Revised Code" pursuant to R.C. 2744.02(B)(5). Furthermore, even if we treated it as such, the estate has not pointed to any legislative action taken by the United States Congress pursuant to the Enforcement Clause that

would abrogate tort immunity or expressly impose a penalty for violations of the above statutes or the rights contained therein. Accordingly, none of these code sections — R.C. 5123.62, 5126.05, 5126.41, and 5126.431— through the Enforcement Clause of the Fourteenth Amendment expressly imposes liability within the meaning of former R.C. 2744.02(B)(5).

*Id.* at ¶ 26. Thus, the trial court in the instant case did not err by relying upon *Ridley* to support its determination that the "Bill of Rights for Persons with Mental Retardation or Developmental Disability" does not expressly impose liability on a political subdivision.

**{¶28}** In fact, other districts in Ohio have also concluded that the R.C. 5123.62 Bill of Rights fails to expressly impose liability on political subdivisions. In *Havely v. Franklin Cty.*, 10th Dist. Franklin No. 07AP-1077, 2008-Ohio-4889, the Tenth District held that R.C. 5123.62 did not expressly impose liability on the political subdivision. In reaching this conclusion, the court relied upon the Supreme Court's decision in *Cramer v. Auglaize Acres*, 113 Ohio St.3d 266, 2007-Ohio-1946, 865 N.E.2d 9. In *Cramer,* the Supreme Court held that R.C. 2744.05(B)(5) created an exception to immunity because the Ohio Nursing Home Patients' Bill of Rights at issue in that case, expressly imposed liability. The Nursing Home statute explicitly authorizes a civil action against "any person or home." While the *Cramer* court admitted that the word "person" was too general, "home" was defined in the statute as including homes run by the county. Thus, the Supreme Court held that an exception to immunity applied. In comparing the two terms, the Court stated:

With respect to nurses Warder and Green, the court of appeals determined that the use of the term "person" in R.C. 3721.17(I)(1) was too general to expressly impose liability on an employee of a political subdivision. Unlike the term "home," the term "person" is not defined in the Patients' Bill of Rights. Under R.C. 3721.13, certain patients' rights — such as the right to adequate and appropriate medical treatment and nursing care and the right to communicate with the home's physician and employees in planning treatment or care — involve the conduct of nursing home employees, but there is no express statement that the employees of a county nursing home will be liable individually for violations of the Patients' Bill of Rights. We therefore hold that R.C. 3721.17(I)(1) does not expressly impose liability on the employees of the county nursing home within the meaning of R.C. 2744.03(A)(6)(a).

{¶29} In *Havely*, the court applying the analysis set forth in *Cramer,* concluded that the "Bill of Rights for Persons with Mental Retardation or Developmental Disability" did not explicitly define a political subdivision, and, therefore, no exception to immunity existed. In *Lawson v. Mahoning Cty. Mental Health Bd.*, 7th Dist. Mahoning No. 10 MA 23, 2010-Ohio-6389, the Seventh District agreed with the analysis in *Havely*, and found no express liability in the "Bill of Rights for Persons with Mental Retardation or Developmental Disability." We also agree with the analysis in these cases and conclude the Bill of Rights did not create an exception to immunity regarding the CBDD or its employees.

{¶30} Even if the R.C. 5123.62 Bill of Rights expressly imposed liability, under the third tier of a sovereign immunity analysis, the court must determine whether any of the defenses outlined in R.C. 2744.03 apply, thereby providing the political subdivision with a defense against liability. *Colbert v. Cleveland*, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶ 9. Here, the CBDD and its employees exercised a

high level of discretion in determining Toros's care; therefore, the defenses set forth in R.C. 2744.03(A)(3) and (5) apply.

{¶31} R.C. 2744.03(A)(3) and (A)(5) state:

(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

 (5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

{¶32} The Ohio Supreme Court in *Elston v. Howland Local School*, 113 Ohio St.3d 314, 2007-Ohio-2070, 865 N.E.2d 84, compared R.C. 2744.03(A)(3) and (A)(5) and noted:

Although both R.C. 2744.03(A)(5) and 2744.03(A)(3) concern an employee's discretionary acts, the focus of subsection (A)(3) is that the employee be engaged in policy-making, planning, or enforcement. Also unlike R.C. 2744.03(A)(5), R.C. 2744.03(A)(3) does not have language

limiting its grant of immunity. In other words, a political subdivision may assert the immunity defense when an employee who has the duty and responsibility for policy-making, planning, or enforcement by virtue of office or position actually exercises discretion with respect to that power. This immunity exists even if the discretionary actions were done recklessly or with bad faith or malice.

*Id.* at ¶ 27.

{¶33} A discretionary act under R.C. 2744.03 involves a heightened amount of official judgment or discretion. *Inland Prods., Inc. v. Columbus*, 193 Ohio App.3d 740, 2011-Ohio-2046, 954 N.E.2d 141, ¶ 62 (10th Dist.). Routine decisions that require little judgment or discretion and that, instead, portray inadvertence, inattention, or unobservance do not create a defense to liability. *Frenz v. Springvale Golf Course & Ballroom*, 8th Dist. Cuyahoga No. 97593, 2012-Ohio-3568. In the instant case, the evidence indicated that the CBDD and the employees exercised a high level of judgment and discretion in determining the requirements for Toros's care.

{¶34} The Revised Code requires county boards of disabilities to "plan and set priorities" for the "provision of * * * programs and other services to meet the needs of county residents who are individuals with mental retardation and other developmental disabilities." R.C. 5126.04(A). The CBDD then must provide eligible individuals with "habilitations or services plans." An ISP is tailored to the specific needs of each individual and requires an analysis of the individual's needs and how to best provide

those needs. To perform this service, trained, certified employees conduct formal and informal evaluations of the individual and then using the knowledge gained, plan and enforce services for the individual. Ohio Adm. Code 5123:2-12-03. These services are more than routine and require a great deal of judgment.

{¶35} It is undisputed that the CBDD assembled an ISP team comprised of certified employees and Toros's parents created an ISP that was tailored to Toros's needs and enforced the plans. These services rendered by the employees and the CBDD in devising the ISP and determining the level of care Toros required was a highly discretionary function.

{¶36} In fact, the evidence showed that the CBDD and its employees did not ignore the fact that Toros's needs may have changed since her surgery. Before her return to the Center, the ISP team discussed the fact that Toros had been on a pureed diet while at home. At that time, Toros's mother advised the team that her daughter would be undergoing swallow tests, and she would provide more current information prior to Toros's return to the center. Because the swallow test had not been done at the time of the initial meeting, the ISP team noted "pureed diet" on Toros's ISP. Her daily activities sheet was changed in November 2010 to delete the pureed diet requirement.[2]

{¶37} Prior to Toros's return to the Center, but after the ISP had been drafted, Toros passed a swallow test and her doctor cleared her to return to the Center without any

---

[2] The ISP was not immediately amended to delete the pureed food specification because the ISP plans are usually updated annually.

dietary restrictions. Toros's mother advised the ISP team of this fact, and Nurse Hamlett also confirmed there were not dietary restrictions with the doctor's office. Upon Toros's return, her mother packed her solid foods in her lunch. All of these actions indicate that the team utilized discretion and judgment in determining Toros's needs and made sure she was able to eat solid foods prior to being placed under their care.

{¶38} Nor do we find the employees acted in a wanton or reckless manner. The Ohio Supreme Court in *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, has defined "wanton" and "reckless" as follows:

> 3. Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result. (*Hawkins v. Ivy*, 50 Ohio St.2d 114, 363 N.E.2d 367 (1977), approved and followed).
>
> 4. Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. (2 Restatement of the Law 2d, Torts, Section 500 (1965), adopted).

*Id.* at paragraphs three and four of the syllabus.

{¶39} There was no indication the staff failed to exercise a duty of care towards Toros based on the information they were provided regarding Toros's condition. Although the staff knew that Toros had a habit of sneaking food, she had never choked. She was successfully eating foods, such as hamburgers and pretzels, prior to returning to the Center, and the staff was told by both Toros's mother and doctor that there were no

dietary restrictions imposed on Toros. Moreover, the choking incident did not occur on Toros's first day back to the Center. The choking incident happened more than a month after she returned; thus, she had successfully eaten solid foods packed for lunch by her mother and from the vending machines numerous times after her return.

{¶40} Toros was also carefully supervised on the date of the incident. Toros attempted to take her coat and purse to the bathroom, but was instructed to leave them behind. She attempted to go to a distant bathroom instead of a closer one, and was directed to go to the closer one. The supervisor, Lashanda Scales, watched Toros enter the bathroom. Once she saw Toros come out of the bathroom, Scales went to make copies. Scales testified that Toros seemed fine upon exiting the bathroom and that Toros "smiled at her." Given there was no way for Toros to have lunch on her person, and because there was no indication that Toros would choke even if she had stolen food, and because Toros was not in distress after leaving the bathroom, we cannot say this decision to make copies was wanton or reckless behavior.

{¶41} Once Toros left the bathroom, she walked to the water fountain and began convulsing. Several employees immediately responded to her aid, including Nurse Hamlett. Toros's mouth was checked for visible obstructions, but none were found. CPR was administered. Given that the employees had no reason to know that Toros would choke, even if she indeed stole food, we cannot say this behavior by the employees was wanton or reckless.

{¶42} Although the estate argues, citing to *Burlinghame v. Estate of Burlinghame*, 5th Dist. Stark No. 2010-CA-000124, 2013-Ohio-3447, that whether the employees were reckless is a jury question, we disagree. *Burlinghame* was decided prior to the Supreme Court's decision in *Anderson.* In fact, *Burlinghame* was reversed by the Supreme Court based on its decision in *Anderson. Burlinghame v. Estate of Burlinghame*, 134 Ohio St.3d 490, 2012-Ohio-5698, 983 N.E.2d 1252.

{¶43} Here, the evidence is undisputed that the CBDD and its employees did not consciously disregard Toros's needs. They acted appropriately based upon the information received from both Toros's mother and doctor and their own observations. Accordingly, we conclude the trial court did not err by granting summary judgment in favor of the CBDD and its employees. The estate's third assigned error is overruled.

{¶44} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

EILEEN A. GALLAGHER, J., CONCURS;

FRANK D. CELEBREZZE, JR., P.J.,
CONCURS IN JUDGMENT ONLY