[Cite as *Fudge v. Watson*, 2016-Ohio-2928.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| S.F., ET AL., | ) | |
| | ) | |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | CASE NO. 15 MA 0082 |
| V. | ) | |
| | ) | OPINION |
| RITA WATSON, ET AL., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
                             Pleas of Mahoning County, Ohio
                             Case No. 14 CV 228

JUDGMENT:                    Affirmed

APPEARANCES:
For Plaintiffs-Appellants        Attorney David L. Engler
                                 725 Boardman-Canfield, Unit S3
                                 Youngstown, Ohio 44512

For Defendants-Appellees         Attorney Steven G. Janik
                                 Attorney Audrey K. Bentz
                                 Attorney Ellyn Mehandale
                                 9200 South Hills Blvd., Suite 300
                                 Cleveland, Ohio 44147-3521

                                 Tracy Miller, Pro-se
                                 c/o Trumbull County Children Services
                                 Board
                                 2282 Reeves Road, N.E.
                                 Warren, Ohio 44483

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: May 4, 2016

DONOFRIO, P.J.

{¶1} Plaintiffs-appellants, S.F., P.P. (aka, K.K.), and T.W., appeal from a Mahoning County Common Pleas Court judgment granting summary judgment to defendants-appellees, Trumbull County Children's Services Board, Marcia Tiger, and Tracy Miller, on appellants' complaint for childhood sexual abuse.

{¶2} Appellants in this case were all in the custody of appellee Trumbull County Children's Services Board (TCCSB) at some point during their teenage years. During that time, appellee Tracy Miller was a coordinator at TCCSB and appellee Marcia Tiger was the director of TCCSB. Also during that time, Rita Watson was employed at TCCSB as a youth leader/dorm mother.

{¶3} On January 28, 2014, appellants filed a complaint against appellees and Watson.[1] The complaint alleged that while appellants were in TCCSB's custody, Watson engaged in inappropriate sexual conduct with them. The complaint further alleged that appellants reported this conduct to Tiger and Miller, yet TCCSB continued to employ Watson and took no corrective action.

{¶4} Appellees filed a motion for summary judgment. They asserted they were entitled to statutory immunity and no exception applied. Appellants filed a response in opposition arguing appellees were not entitled to immunity.

{¶5} The trial court granted appellees' summary judgment motion. Appellants filed a timely notice of appeal on June 1, 2015.

{¶6} An appellate court reviews the granting of summary judgment de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper.

{¶7} A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 9th Dist. No. 27799, 2015-Ohio-4167, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to

---

[1] Service was never perfected on Watson and she is not a party to this appeal.

demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 1993-Ohio-191, 617 N.E.2d 1129.

{¶8}   Appellants now raise a single assignment of error stating:

> PLAINTIFFS-APPELLANTS, [S.F.], [P.P.], AND T.W. ASSIGN AS ERROR THAT THE TRIAL COURT ACTED INCORRECTLY IN RULING THAT, AS TO QUESTIONS OF WHETHER STATUTORY IMMUNITY PER OHIO REVISED CODE ("RC") §§2744.01 ET SEQ. WAS AVAILABLE TO DEFENDANTS-APPELLEES TRUMBULL COUNTY CHILDREN'S SERVICES BOARD, MARCIA TIGER, AND TRACY MILLER, THERE WERE NO GENUINE ISSUES OF FACT, AND THAT DEFENDANTS-APPELLEES TRUMBULL COUNTY CHILDREN'S SERVICES BOARD, MARCIA TIGER, AND TRACY MILLER WERE ENTITLED TO SUMMARY JUDGMENT IN THEIR FAVOR AS A MATTER OF LAW.

{¶9}   Appellants argue that appellees do not have immunity in this case. They assert that under the second tier of the immunity analysis, an exception exists. Appellants point out that pursuant to R.C. 2305.111(A)(1), the tort of childhood sexual abuse can be committed by, among others, a supervisor of someone in custody, a teacher, an  administrator, a coach, or an employee of a detention facility. They further note that political subdivisions can operate detention facilities, hospitals, and schools and the people working at these facilities are employees of the political subdivisions. Therefore, appellants argue, by defining the tort of childhood sexual

abuse and including governmental facilities and employees within that definition, R.C. 2305.111 expressly imposes civil liability for the tort of childhood sexual abuse on those employed by political subdivisions.

{¶10} In support, appellants rely on *Watkins v. Dept. of Youth Services*, 143 Ohio St.3d 477, 2015-Ohio-1776, 39 N.E.3d 1207. They point to the Court's statement that "R.C. 2305.111(C) applies to claims against both public and private tortfeasors." *Id.* at ¶ 7. Appellants assert *Watkins* stands for the proposition that R.C. 2305.111 expressly imposes civil liability for the tort of childhood sexual abuse on the state and its employees.

{¶11} It follows, appellants argue, that Miller and Tiger are subject to the terms of R.C. 2305.111. They go on to assert that Watson's conduct violated the criminal statutes relevant to claims of childhood sexual abuse. And they assert Miller and Tiger aided and abetted Watson in her sexual abuse.

{¶12} Finally, appellants claim TCCSB is vicariously liable for the torts committed by its employees.

{¶13} We will separately analyze the claim against TCCSB and the claim against Tiger and Miller.

## TCCSB

{¶14} Whether a political subdivision is entitled to immunity is analyzed using a three-tiered process. *Green Cty. Agricultural Soc. v. Liming*, 89 Ohio St.3d 551, 556, 733 N.E.2d 1141 (2000). Under the first tier, R.C. 2744.02(A)(1) sets out the general rule that political subdivisions are not liable in damages. *Id.* at 556-557. Under the second tier, the court must determine whether any of the exceptions to immunity set out in R.C. 2744.02(B) apply. *Id.* at 557. Finally, under the third tier, if the court finds that any of R.C. 2744.02(B)'s exceptions apply, it must consider R.C. 2744.03, which provides defenses and immunities to liability. *Id.*

{¶15} Under the first tier, TCCSB has immunity and is not liable for damages. TCCSB is a political subdivision performing a governmental function. R.C. 2744.01(C)(2)(m)(o); R.C. 2744.01(F). See also, *Spears v. Bush*, 3d Dist. No. 9-10-

05, 2010-Ohio-3547, ¶ 29.

{¶16} Under the second tier, we must examine whether any exceptions to immunity apply. R.C. 2744.02(B) sets out five specific exceptions to immunity. The only exception appellants assert applies here is R.C. 2744.02(B)(5), which provides:

> [A] political subdivision is liable for injury, death, or loss to person or property when civil liability *is expressly imposed upon the political subdivision by a section of the Revised Code*, including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because that section provides for a criminal penalty, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision.

(Emphasis added.)

{¶17} Appellants claim that R.C. 2305.111 expressly imposes liability on TCCSB. R.C. 2305.111 is titled "Limitation of action for assault or battery; when action accrues when identity of defendant unknown." It defines the tort of "childhood sexual abuse" as "any conduct that constitutes any of the violations identified in division (A)(1)(a) or (b) of this section and would constitute a criminal offense under the specified section or division of the Revised Code, if the victim of the violation is at the time of the violation a child under eighteen years of age[.]" R.C. 2305.111(A)(1). R.C. 2305.111(A)(1) applies to any of the following violations committed in the following specified circumstances:

> (a) A violation of section 2907.02 [rape] or of division (A)(1), (5), (6), (7), (8), (9), (10), (11), or (12) of section 2907.03 [sexual battery] of

the Revised Code;

(b) A violation of section 2907.05 [gross sexual imposition] or 2907.06 [importuning] of the Revised Code if, at the time of the violation, any of the following apply:

(i) The actor is the victim's natural parent, adoptive parent, or stepparent or the guardian, custodian, or person in loco parentis of the victim.

(ii) The victim is in custody of law or a patient in a hospital or other institution, and the actor has supervisory or disciplinary authority over the victim.

(iii) The actor is a teacher, administrator, coach, or other person in authority employed by or serving in a school for which the state board of education prescribes minimum standards pursuant to division (D) of section 3301.07 of the Revised Code, the victim is enrolled in or attends that school, and the actor is not enrolled in and does not attend that school.

(iv) The actor is a teacher, administrator, coach, or other person in authority employed by or serving in an institution of higher education, and the victim is enrolled in or attends that institution.

(v) The actor is the victim's athletic or other type of coach, is the victim's instructor, is the leader of a scouting troop of which the victim is a member, or is a person with temporary or occasional disciplinary control over the victim.

(vi) The actor is a mental health professional, the victim is a mental health client or patient of the actor, and the actor induces the victim to submit by falsely representing to the victim that the sexual contact involved in the violation is necessary for mental health treatment purposes.

(vii) The victim is confined in a detention facility, and the actor is

an employee of that detention facility.

(viii) The actor is a cleric, and the victim is a member of, or attends, the church or congregation served by the cleric.

**{¶18}** Thus, the statute is very specific as to who the actor must be. There is no reference whatsoever in the statute to political subdivisions or governmental entities. The statute imposes liability on the "actor." It does not impose liability on the "actor's" supervisor. Likewise, it does not impose liability on a political subdivision.

**{¶19}** In finding that certain Revised Code sections did not "expressly impose" liability on a political subdivision for failure to inspect a family day-care home, in a plurality opinion, the Ohio Supreme Court looked to the definition of "expressly." *Butler v. Jordan*, 92 Ohio St.3d 354, 357, 2001-Ohio-204, 750 N.E.2d 554. It stated: "'Expressly' means 'in direct or unmistakable terms: in an express manner: *explicitly, definitely, directly.*' (Emphasis added.)" *Id.*, quoting Webster's Third New International Dictionary (1986) 803.

**{¶20}** Similarly, in examining whether a statute expressly imposed liability for purposes of the immunity exception, the Eighth District held that a "general imposition of liability is not sufficient." *Toros v. Cuyahoga Cty. Bd. of Dev. Disabilities*, 8th Dist. No. 99637, 2013-Ohio-4601, ¶ 25. It found that a statute that creates a right to pursue civil liability, but does not specifically identify a political subdivision, does not "expressly impose" liability. *Id.*

**{¶21}** Nothing in R.C. 2305.111 explicitly, definitely, or directly imposes liability on political subdivisions. Political subdivisions are not mentioned at all. Thus, R.C. 2744.02(B)(5)'s exception to immunity does not apply here.

**{¶22}** Appellants rely on the Ohio Supreme Court's decision in *Watkins*, 2015-Ohio-1776, in support of their position. In that case, the Ohio Supreme Court held that R.C. 2305.111(C)'s 12-year statute of limitations, pertaining to actions brought by victims of childhood sexual abuse, rather than R.C. 2743.16(A)'s two-year statute of limitations, which pertains to civil actions filed against the state, applied to such

claims. *Id.* at ¶ 1. Never once was the issue of political subdivision immunity discussed in *Watkins.* The Court determined that the appellate court erred in holding that a claim resulting from childhood sexual abuse cannot be pursued against the state more than two years after the claim accrued. *Id.* at ¶ 23. The opinion focused solely on the statute of limitations. Thus, whether political subdivision immunity might apply was never considered by the *Watkins* Court.

**{¶23}** TCCSB is entitled to immunity. Consequently, we need not reach the third tier, which provides defenses and immunities to liability.

Tiger and Miller

**{¶24}** Pursuant to R.C. 2744.03(A)(6), an employee of a political subdivision is immune from liability in a suit to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, unless one of the following applies:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

**{¶25}** In this case, none of these situations apply.

**{¶26}** As to the first way to impose liability on an employee, appellants have never alleged that Tiger and Miller acted manifestly outside of the scope of their

employment. Therefore, the first way to impose liability does not apply.

**{¶27}** As to the second way to impose liability on an employee, while appellants do not specifically rely on it, the tone of their arguments suggests that Tiger and Miller acted in bad faith or in a wanton or reckless manner. But even construing the evidence in appellants' favor, there is no evidence that Tiger and Miller acted in such a manner.

**{¶28}** And as to the third way to impose liability on an employee, appellants again rely on their argument that R.C. 2305.111 expressly imposes liability on Tiger and Miller. Tiger or Miller could potentially be actors here. However, even construing the evidence in appellants' favor, there is no evidence that would make Tiger or Miller an actor in this case.

**{¶29}** Appellants allege Tiger and Miller either aided and abetted Watson or were complicit in Watson's conduct by failing to properly investigate.

**{¶30}** Each of the three appellants stated at their depositions that they never spoke to Tiger. S.F. stated that she might have said "hi" to Tiger once or twice, but other than that she had never spoken to her. (S.F. Dep. 94). K.K. stated that Tiger's name sounded familiar but she never recalled speaking to her. (K.K. Dep. 38). K.K. also stated she did not know Tiger and had no complaints against her. (K.K. Dep. 73). And T.W. stated that she never spoke to Tiger. (T.W. Dep. 48). Thus, there was no evidence that any of the appellants ever reported any of Watson's alleged conduct to Tiger.

**{¶31}** Additionally, Tiger submitted her affidavit. Tiger averred that she was unaware of any allegation that Watson engaged in inappropriate contact with T.W. and S.H. until the filing of the instant lawsuit. (Tiger Aff. ¶ 14, 15). And she averred that she was unaware of K.K.'s allegations against Watson until August 9, 2007, during an interview K.K. had with a detective. (Tiger Aff. ¶ 13). By this time, however, Watson was no longer working any hours for TCCSB due to allegations by another resident on June 19, 2007, that Watson had engaged in inappropriate sexual contact with her. (Tiger Aff. ¶ 4, 9, 10).

{¶32} Moreover, appellants had very limited conversations with Miller. K.K. stated that she did not know Miller, she never spoke to Miller, and she had no complaints against Miller. (K.K. Dep. 38, 73). S.F. stated that she reported to Miller that Watson had asked her some questions about "gay sex." (S.F. Dep. 57). S.F. stated that she never told Miller or anyone else at TCCSB about the alleged sexual contact between her and Watson. (S.F. Dep. 64, 75-76). S.F. stated that Miller did not know anything about what Watson allegedly did. (S.F. Dep. 103). T.W. also stated she reported to Miller that Watson had asked her about "gay sex." (T.W. Dep. 52). T.W. stated she never told Miller that Watson had touched her. (T.W. 56-57). Thus, there was no evidence that any of the appellants ever reported to Miller that Watson touched them inappropriately.

{¶33} Miller also submitted her affidavit. Miller averred that on June 19, 2007, she became aware of allegations that Watson had engaged in inappropriate sexual contact with a resident, who was not one of the appellants. (Miller Aff. ¶ 3). Before that time, Miller had no knowledge of any allegations that Watson had engaged in such conduct. (Miller Aff. ¶ 4). As of June 20, 2007, Watson was not permitted on TCCSB property and did not return to work for TCCSB. (Miller Aff. ¶ 8, 9). Miller further averred that the first time she learned of K.K.'s allegations was on August 9, 2007, when K.K. reported to a detective that Watson touched her. (Miller Aff. ¶ 11). Miller stated that she did not learn of S.F.'s and T.W.'s allegations until they filed the instant lawsuit. (Miller Aff. ¶ 13, 14).

{¶34} Based on appellants' depositions and Tiger's and Miller's affidavits, there is no evidence that Tiger or Miller were aware of appellants' accusations that Watson had sexual contact with them. None of the appellants ever spoke to Tiger. K.K. never spoke to Miller. And S.F. and T.W. only told Miller that Watson had an inappropriate conversation with them.

{¶35} Appellants assert R.C. 2305.111 expressly imposes liability on Tiger and Miller. That statute provides that a violation of the gross sexual imposition statute or the importuning statute constitutes the tort of childhood sexual abuse when

the "actor" is one of the types of individuals specifically listed. R.C. 2305.111(A)(1). An "actor," for purposes of imposing liability, includes such individuals as the victim's natural, adoptive, or step parent; the victim's teacher, administrator, or coach; and the person having supervisory or disciplinary authority over a victim who is in the custody of law or a patient in a hospital. R.C. 2305.111(A)(1)(b). In this case, appellants contend that Tiger and Miller were complicit in Watson's sexual abuse of them and were therefore "actors" within the meaning of the statute. But Tiger and Miller were not actors because they were completely unaware of appellants' accusations that Watson had sexual contact with them. They could not be complicit in conduct of which they knew nothing about. There was no evidence that established Tiger and Miller were actors.

{¶36} In *Fediaczko v. Mahoning Cty. Children Servs.*, 7th Dist. No. 11 MA 186, 2012-Ohio-6090, on which the trial court relied in this case, this court was faced with whether summary judgment should have been granted in favor of a children's services director and caseworker on claims by a deceased child's estate alleging reckless investigation, screening, and placement that eventually led to the child's death.

{¶37} As to the director, we found there was no indication that she was reckless merely because of the acts or omissions of her employees. *Id.* at ¶ 50. We stated that by asserting liability for the acts or omissions of caseworkers, the estate was attempting to impose liability on the director by mere virtue of the fact that she was the executive director of the agency during the time of the agency's contact with the child. *Id.* at ¶ 51. We held that respondeat-superior liability is not an exception to immunity. *Id.* Therefore, we found the trial court erred in denying the director's motion for summary judgment.

{¶38} As to the caseworker, we found that the estate did not create a genuine issue of material fact as to whether the caseworker was conscious that her acts or omissions would in all probability result in injury to the child. *Id.* at ¶ 89. We noted that "[r]ecklessness in this context is not a low standard as the actor must be

conscious that his conduct will in all probability result in injury." *Id.* at ¶ 88, citing *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 3. Therefore, we found the trial court also erred in denying the caseworker's motion for summary judgment.

**{¶39}** Similarly, in this case, appellants are attempting to impose liability on Tiger simply because she was the director of TCCSB during the time Watson allegedly had inappropriate contact with them. None of the appellants had any conversations with Tiger or reported any inappropriate conduct by Watson to Tiger. Therefore, summary judgment in Tiger's favor was proper.

**{¶40}** And as was the case with the caseworker in *Fediaczko*, appellants did not present any evidence that would create genuine issue of material fact as to whether Miller acted recklessly. At best, the evidence suggests that two of the appellants reported to Miller that Watson had an inappropriate conversation with them about sex. None of the appellants ever reported to Miller that Watson touched them. K.K. never even spoke to Miller. And S.F. stated that Miller did not know anything about what Watson allegedly did. Thus, there is no evidence that would create a genuine question of fact as to whether Miller acted recklessly or in bad faith. Therefore, the trial court properly granted summary judgment in Miller's favor.

**{¶41}** Accordingly, appellants' sole assignment of error is without merit.

**{¶42}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.