[Cite as *S.A.S. v. Wellington School*, 2020-Ohio-4478.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| [S.A.S.], | : | |
| Plaintiff-Appellant, | : | |
| | | No. 19AP-305 |
| v. | : | (C.P.C. No. 18CV-3471) |
| The Wellington School et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on September 17, 2020

**On brief:** *The Robenalt Law Firm, Inc., Thomas D. Robenalt,* and *John P. Colan*, for appellant. **Argued:** *John P. Colan.*

**On brief:** *Freund, Freeze & Arnold, Sandra R. McIntosh,* and *Bartholomew Freeze*, for appellees. **Argued:** *Bartholomew Freeze.*

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} As presented to us at this juncture, this case involves two very straightforward questions of statutory interpretation. What does the word "any" mean in the context of R.C. 2305.111(C), which extends to 12 years the statute of limitations for "an action brought by a victim of childhood sexual abuse asserting any claim resulting from childhood sexual abuse"? And does the phrase "resulting from" there mean simply "for," in a way that restricts claims to sexual abuse committed directly by the defendant, or is it somewhat more expansive so as not to restrict the covered claims solely to those of sexual abuse alone?

{¶ 2} Fortunately for our task, the Supreme Court of Ohio already has answered the first question: for purposes of the relevant statute, " 'any' means any." *Watkins v. Dept. of Youth Svcs.*, 143 Ohio St.3d 477, 2015-Ohio-1776, ¶ 16.

{¶ 3}   And the second question really doesn't prove too difficult either:   "resulting from" in this statutory context extends beyond the thing itself to encompass claims arising out of and that would not exist but for the alleged childhood sexual abuse.

{¶ 4}   Therefore, the 12-year statute of limitations can, within statutorily specified contexts, apply not only to claims against an "actor" who is, for example, a "parent," or "cleric," or "teacher" of the claimed victim, *see, e.g.,* R.C. 2305.111(A)(1)(b)(i), (iii), and (viii), but also against other defendants, potentially including related institutions, that are alleged to have violated a duty to the claimed victim in a way that makes them liable for harms resulting from the alleged abuse.

{¶ 5}   Because the trial court did not share that statutory understanding and grounded its rulings entirely on what we find to be an erroneous construction of the law, we will return the case there for further assessment to be conducted in light of the text of the statute.   In doing so, we simply observe the statutory framework that the General Assembly has established; we do not mean to imply any particular outcome that may be appropriate when that framework is properly construed and applied to a record developed before the trial court.

{¶ 6}   Plaintiff-appellant S.A.S. filed her notice of appeal on May 10, 2019, "from the April 25, 2019 Journal/Judgment Entry of the Trial Court granting summary judgment to, and dismissing all claims against, Defendants The Wellington School and [its headmaster from the relevant time] Richard O'Hara [together, 'Wellington'], which judgment against these Defendants was made final by Plaintiff's Notice of Voluntary Dismissal of all claims against Defendant Lawrence Dibble without prejudice[], such dismissal having been journalized on April 26, 2019."

{¶ 7}   That April 25, 2019 Entry recited that:

> [S.A.S.] alleges [in her April 25, 2018 Complaint] that while a high school student at The Wellington School she was the victim of inappropriate sexual behavior by a teacher, * * * Lawrence Dibble. * * * * [Her] complaint alleged claims for gross sexual imposition and sexual imposition and/or attempt, pursuant to R.C. 2907.05 and 2907.06, against all Defendants (Count I); negligent hiring, retention, and supervision against Wellington * * * (Count II); and invasion of privacy (Count III) and infliction of emotional distress (Count IV) against all defendants.   Wellington * * * * filed a motion for judgment on the pleadings which the court denied, in part, and granted, in

> part. In part the court held that R.C. 2305.111(C) does not apply to Wellington * * * despite allegations in Count I of the complaint.

*Id.* at 1.

{¶ 8} The trial court earlier had dispensed with the invasion of privacy count against Wellington (as based on an allegation that Dibble had filmed her "in various stages of undress * * * in the locker room"), granting the motion for judgment on the pleadings on that count given the four-year statute of limitations that applies to invasions of privacy. January 3, 2019 Entry at 6-7. In the course of that earlier decision, the trial court had explained that "R.C. 2305.111(C) is the statute of limitations if the plaintiff is a childhood victim of gross sexual imposition or sexual imposition, and if the actor was" a teacher in her school. *Id.* at 4. The statute "is very specific as to who the 'actor' must be and imposes liability only on that actor, not on the actor's supervisor," that ruling continued. *Id.*, citing *S.F. v. Watson*, 7th Dist. No. 15 MA 0082, 2016-Ohio-2928, ¶ 18. The decision went on: "Defendant Dibble clearly fits within the statute's description of 'actor.' However, R.C. 2305.111(C) only applies to claims alleged against the 'actor,' not the actor's supervisor/employer Wellington." *Id.* at 4-5. Notwithstanding that assessment, the trial court denied Wellington judgment on the pleadings regarding the counts for negligent hiring, retention, and supervision and for infliction of emotional distress because "[n]othing in the pleadings conclusively confirms when plaintiff discovered or should have discovered an injury to her that occurred as a result of" the former count and "[n]othing in the pleadings confirms exactly when plaintiff was injured and felt the emotional impact" from the latter count. *Id.* at 6, 7.

{¶ 9} In the April 25, 2019 Entry from which S.A.S. appeals, the trial court concluded that because the undisputed facts then before it established that S.A.S. "knew or should have known" of her injury from Wellington's allegedly negligent hiring, retention, and supervision of Dibble "more than two years before she filed suit," and that "the four-year statute of limitations governing Plaintiff's claim for intentional infliction of emotional distress had unquestionably run out" before she filed suit, Wellington was entitled to summary judgment on those counts. April 25, 2019 Entry at 7, 8-9.

{¶ 10} Applying the rationale presaged by its January 3, 2019 ruling, the trial court again rejected the possibility that the 12-year statute of limitations established by R.C. 2305.111(C) can apply to claims against anyone other than the "actor" who commits sexual imposition or gross sexual imposition. *Id.* at 6. The trial court for purposes of summary judgment reiterated that "Dibble clearly fits within the statute's description of an 'actor.' However, R.C. 2305.111(C) only applies to claims alleged against Dibble not his supervisor/employer Wellington * * * * [T]he Wellington defendants are not 'actors' which is the only status that triggers R.C. 2305.111(C)." *Id.* While acknowledging that "the Ohio Supreme Court did hold in *Watkins* that ' "any" means any, and "all" means all,' " the trial court limited that interpretation: "this holding was only with respect to whether the statute applied to both public as well as private actors. The Supreme Court has not decided, in that case or any [sic] other, that the unusually long 12-year statute of limitations applies to supervisors and/or employers of an actor." *Id.* (also again referring to the trial court's understanding of the Seventh District's *Watson* decision).

{¶ 11} Thus, the trial court found the "disputed facts" surrounding "allegations of lack of care by the Wellington defendants" to be "not material." *Id.* at 7. It returned again to its view that "[w]hile * * * plaintiff maintains that R.C. 2305.111 allows a twelve-year statute of limitations for her cause of action because [S.A.S.]'s claims against Wellington * * * result from Dibble's actions, * * * R.C. 2305.111 does not apply to the Wellington defendants because they were not 'actors.' " *Id.* at 8. On that ground, the trial court dismissed all claims against Wellington. *Id.* at 9.

{¶ 12} S.A.S.'s appeal presents one assignment of error:

> The trial court erred in granting in part and denying in part judgment on the pleadings and in granting summary judgment to Defendant-Appellants The Wellington School and Richard O'Hara based on the general statutes of limitations found in R.C. 2305.09(D) and 2305.10(A), when the specific 12-year statute of limitations for childhood sexual abuse (R.C. 2305.111(C)) were applicable and would preclude judgment on the pleadings or summary judgment.

Appellant's Brief at 8.

{¶ 13} We review a trial court's statutory interpretations afresh, as we do a grant of judgment on the pleadings or of summary judgment. So we turn to the statute at issue.

{¶ 14} "In 2006, the General Assembly passed Am.Sub.S.B. No. 17 * * *, which substantially rewrote R.C. 2305.111, setting a firm accrual date as the date on which the victim attains the age of majority for claims based on childhood sexual abuse, but also greatly expanding the limitations period for such claims to 12 years." *Watkins*, 2015-Ohio-1776, at ¶ 10.

{¶ 15} The structure of R.C. 2305.111 is relatively straightforward. The (A) subsection defines "childhood sexual abuse" to mean "any conduct that constitutes any of the violations identified in [R.C. 2907.02, regarding rape; or specified provisions of R.C. 2907.03, regarding various forms of sexual battery; or R.C. 2907.05 or 2907.06, regarding gross sexual imposition or sexual imposition, where among other circumstances '[t]he actor' is the victim's parent, or a teacher or other official at the victim's school, or the victim's coach or scout leader, or cleric,] and would constitute a criminal offense under the specified section, * * * if the victim of the violation is at the time of the violation a child under eighteen years of age or a child with a developmental disability or physical impairment under twenty-one years of age."

{¶ 16} The (B) subsection relates specifically to an action for assault or battery.

{¶ 17} The (C) subsection reads, in pertinent part: "an action brought by a victim of childhood sexual abuse asserting any claim resulting from childhood sexual abuse * * * shall be brought within twelve years after the cause of action accrues. For purposes of this section, * * * a cause of action for a claim resulting from childhood sexual abuse * * * accrues upon the date on which the victim reaches the age of majority." The subsection then provides for tolling of the limitations period in the event of fraudulent concealment of facts that form the basis of the claim.

{¶ 18} Consistent with the statutory text, the Supreme Court of Ohio instructs that "R.C. 2305.111(C) applies to *all* claims" brought by a victim of childhood sexual abuse for a claim resulting from childhood sexual abuse. *Watkins* at ¶ 16 (emphasis in original). That includes even "claims against the state resulting from childhood sexual abuse." *Id.* at ¶ 23.

{¶ 19} So where a child has been victimized by rape, or by one of the specified forms of sexual battery, or by sexual imposition or gross sexual imposition committed by a statutorily specified "actor," the statute of limitations for "any claim resulting from" such abuse is 12 years from the accrual of the action. R.C. 2305.111(A) and (C).

{¶ 20} Wellington argued to the trial court that the "12-year statute of limitations" could not apply against Wellington "based on allegations of sexual misconduct *against Dibble*." *See* April 8, 2019 Wellington Reply in support of summary judgment at 1-2 (emphasis in original). Wellington persuaded the trial court at the motion for judgment on the pleadings stage that although "Defendant Dibble clearly fits within the statute's description of 'actor' [as relevant for purposes of the gross sexual imposition/sexual imposition predicate]," the extended statute of limitations period under "R.C. 2305.111(C) only applies to claims alleged against the 'actor,' not the actor's supervisor/employer Wellington." January 3, 2018 Entry at 4-5. *Compare* August 15, 2018 Wellington Reply in support of motion for judgment on the pleadings at 8, 9 (emphasizing, with emphasis in original, that "Plaintiff alleges only 'gross sexual imposition' and 'sexual imposition' *against Dibble,*" and that Wellington itself "did *not* commit 'gross sexual imposition' or 'sexual imposition,' " and therefore "did not – by definition – commit 'childhood sexual abuse' ").

{¶ 21} The trial court early on bought the argument that the 12-year statute of limitations cannot apply to institutional defendants—even on "any claim resulting from childhood sexual abuse," to use the words of R.C. 2305.111(C)—and wound up ruling against S.A.S.'s claims against Wellington on that basis. *See, e.g.*, April 25, 2019 Entry at 6 ("Dibble clearly fits within the statute's description of an 'actor.' However, R.C. 2305.111(C) only applies to claims alleged against Dibble not his supervisor/employer Wellington. * * * * Thus, the general statutes of limitation [rather than the 12-year statute] apply to claims against the Wellington defendants").

{¶ 22} Wellington renews that argument to us. "Plaintiff's claim for 'childhood sexual abuse' is a claim *against Dibble*," Wellington repeats. Appellees' Brief at 41 (emphasis in original). And the statutory term "actor" "does *not* include the school itself. * * * * In fact, Plaintiff appears to acknowledge this limitation by alleging she had one of the statutorily enumerated relationships *with Dibble*." *Id.* (emphasis in original) (further arguing that "equating 'actor' with 'school' makes no sense"). In the same vein, Wellington urges that because it cannot be included as a "person" on a sex offender registry, "a determination that Wellington is an 'actor' under R.C. 2305.111 would produce an absurd result unsupported by statutory language." *Id.* at 42 (stating, too, with emphasis again in the original, that "a school authority is an 'actor' under [the statute] *only when* his/her own

conduct would constitute a 'criminal act' of 'gross sexual imposition' or 'sexual imposition' as statutorily defined").  Wellington presses on:

> Plaintiff alleges only "gross sexual imposition" and "sexual imposition" *against Dibble*; therefore, her claim for "childhood sexual abuse" is necessarily derivative of the underlying criminal statutes for "gross sexual imposition" and "sexual imposition."  *See* Complaint ¶ 30 (alleging "gross sexual imposition" and "sexual imposition" under R.C. 2907.05-.06 *against Dibble*).

Appellees' Brief at 44 (emphasis in original).

{¶ 23}  All of that is true (or, with regard to the nature of S.A.S.'s allegations against Dibble, perhaps arguably true).  But accepted as true, none of that—no matter how many times the argument is repeated—removes S.A.S.'s claims against Wellington from the 12-year limitation period established by law for "an action brought by a victim of childhood sexual abuse asserting *any* claim *resulting from* childhood sexual abuse."  R.C. 2305.111(C) (emphasis added).

{¶ 24}  We know that "any" means "any."  *Watkins* at ¶ 16.  And the plain meaning of "resulting from" is not simply "of" or "for" (words that would have been easy enough for the General Assembly to employ were its aim not to include institutional defendants along with alleged individual accused rapists, batterers, and sexual imposition "actors" covered by the 12-year period).  The legislature's use of the term "resulting from" conveys an intent *not* to limit the 12-year period solely to claims of (or for) "childhood sexual abuse" itself; rather, the limitations period explicitly applies to "any" claim "resulting from" such alleged abuse.  Thus, Wellington argues very much aside the point when it submits that "Plaintiff's * * * common law claims against the Wellington Defendants are *not* claims for 'childhood sexual abuse' as defined" in the statute, but are instead "*employment* claims based on retention, hiring, and supervision * * *."  Appellees' Brief at 52 (italics in original; underscore added).

{¶ 25}  We are not empowered to strip the phrase "resulting from" out of the statute, and we endeavor to give full meaning to every statutory phrase.  *Dunbar v. State*, 136 Ohio St.3d 181, 2013-Ohio-2163, ¶ 18, quoting *Wachendorf v. Shaver*, 149 Ohio St. 231, 237 (1948) (" 'it is a cardinal rule of statutory construction that significance and effect should if possible be accorded every word, phrase, sentence and part of an act' "); *LeFever v. State*,

10th Dist. No. 12AP-1034, 2013-Ohio-4606, ¶ 29 ("In determining the meaning of a statute, a court may not take out, strike or read anything out of a statute, or delete, subtract or omit anything therefrom").  And generally, statutory "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage."  R.C. 1.42.

{¶ 26}  Wellington argues that "a claim can result from 'childhood sexual abuse' only when it (1) meets the statutory definition of that term [presumably, 'childhood sexual abuse'] or (2) is a derivative claim such as a claim for *respondeat superior* liability.  In other words, claims that 'result' from abuse must be connected to the abuse in the same way the underlying criminal conduct is: the 'actor' (i.e., alleged abuser) has inflicted an injury through the abuse." *Id.* at 53 (emphasis in original); *compare id.* at 44 (saying that S.A.S.'s "claim for 'childhood sexual abuse' is necessarily derivative of the underlying criminal statutes for 'gross sexual imposition' and 'sexual imposition' ").  But (1) it does not accord with the general rules of common usage to suggest that something "can result from" something else only when it *is* that something else.  And (2) the second prong of Wellington's argument (that the statute does not affect claims of negligent hiring or supervision against the employer of an abusing actor) makes sense in this context and removes Wellington from the effect of the 12-year statute of limitations only if designed to restate the view that the extended limitations period applies only to claims against an "actor" or a stand-in for the actor—and the statute does not begin to say that.

{¶ 27}  We find instructive the explication of the "ordinary meaning" of "the phrase 'results from' " offered by the United States Supreme Court in *Burrage v. United States*, 571 U.S. 204 (2014).  That court recited: "A thing 'results' when it '[a]rise[s] as an effect, issue, or outcome *from* some action, process, or design.' 2 The New Shorter Oxford English Dictionary 2570 (1993).  'Results from' imposes, in other words, a requirement of actual causality. * * * * [A] phrase such as 'results from' imposes a requirement of but-for causation." *Id.* at 210-11, 214 (emphasis in original).  Dictionary.com defines the verb "result" to the same effect:  "to spring, arise, or proceed as a consequence of actions, circumstances, premises, etc.; be the outcome."  Webster's II New College Dictionary 946 (1995) similarly defines the verb as meaning "[t]o happen or exist as a result of a cause."

{¶ 28}  To the extent that any claim against Wellington arises out of childhood sexual abuse allegations against Dibble—and what extent, if any, that is will pose a matter for

further examination, potentially involving questions both of law and of fact—it would not exist but for that alleged conduct and it is a "claim resulting from childhood sexual abuse" subject to the 12-year limitation period. Wellington's repeated argument that it itself is not an "actor" for purposes of the statute, that is, is not sufficient to ensure that the 12-year statute does not apply to S.A.S.'s claims.

{¶ 29} Wellington worries that to extend the 12-year period to "every common law claim with any tangential relationship to the plaintiff's claim against the 'actor' (i.e., alleged abuser) based on a 'criminal offense' " is to impose a rule of "remarkable" breadth; surely, Wellington says, the legislature could not have intended to ad0pt such "sweeping changes" in an " 'inconspicuous manner.' " Appellees' Brief at 55. But the statute does not apply the 12-year period to every claim with a "tangential" relationship to claims against the actor; it imposes the requirement that a claim be one "resulting from childhood sexual abuse." R.C. 2305.111(C). And the General Assembly's alteration of the limitations period was hardly "inconspicuous": apart from the statute's definitions of terms and establishment of the accrual date, limitations provisions constituted the entirety of the statutory section. *Compare* Appellees' Brief at 55 (describing statute as involving actor "liability," and not mentioning limitations focus) *with Watkins* at ¶ 10 (describing statute as "setting a firm accrual date * * *, but also greatly expanding the limitations period for such [childhood sexual abuse] claims to 12 years").

{¶ 30} Wellington observes that the same legislation that extends the limitations period elsewhere provides for certain victims who were shut out by limitations periods from making assault and battery claims as based on childhood sexual abuse to request action to place individual offenders on the sex offender registry. *See* Appellees' Brief at 38-39, 42, citing R.C. 2721.21. That statutory section separately defines "defendant" as limited to being a "person," and says that under appropriate circumstances, a court may order such a "defendant" to be put on the list and required to register as a sex offender. R.C. 2721.21(A)(1), and (D). But that definition of "defendant" is specifically for use limited to "this [R.C. 2721.21] section," R.C. 2721.21(A)(1), and has no apparent relevance to the 12-year period established by R.C. 2305.111(C). The General Assembly is within its rights to confine the sex offender registry to individuals, but this case does not have anything to do with that determination. The General Assembly is also within its rights to direct that tort

or other claims of a certain sort (those resulting from childhood sexual abuse) have a longer limitations period than that which normally would apply.

{¶ 31} Wellington is similarly off-point when it argues from federal case law holding that federal Section 1983 claims are governed by a state's personal injury statute of limitations. *See* Appellees' Brief at 54, citing *Fudge v. Watson*, N.D.Ohio 4:12CV2428, 2013 U.S. Dist. Lexis 16835 (Feb. 7, 2013). Indeed, a later opinion from the same federal judge in a case involving claims against a school system as well as individual defendants underscores how inapposite the argument is: while *federal* Section 1983 law restricts the limitations period in that context to the period specified by the state's specific personal injury statute, "there is little doubt that virtually all state law claims would fall under the expanded statute of limitations offered by O.R.C. 2305.111(C)." *Spragling v. Akron Pub. Schools*, N.D.Ohio No. 5:18CV1969, 2019 U.S. Dist. Lexis 44906, *6 (March 19, 2019).

{¶ 32} *S.G. v. Watson*, 7th Dist. No. 15 MA 0082, 2016-Ohio-2928, invoked by both Wellington and the trial court, also is unavailing on the statute of limitations point. *Compare* April 25, 2019 Entry at 6; Appellees' Brief at 51. Most fundamentally, *Watson* is not a statute of limitations case at all: it deals with questions of political subdivision immunity and matters of liability. Addressing whether R.C. 2305.111 " 'expressly impose[s]' " liability on a political subdivision, *id.* at ¶ 10, 16 (quoting immunity statute), the Seventh District finds it does not. *Id.* at ¶ 18 ("[T]he statute is very specific as to who the actor must be. There is no reference whatsoever in the statute to political subdivisions or governmental entities. The statute imposes liability on the 'actor.' It does not impose liability on the actor's supervisor. Likewise, it does not impose liability on a political subdivision").

{¶ 33} In examining the statute of limitations question in the case at hand, we need venture no view on whether R.C. 2305.111 creates some new cause of action against or "imposes liability" on anyone, let alone a non-actor (or alleged rapist or batterer). As we noted above, the statute begins with a definition (of "childhood sexual abuse," for purposes of "this section"), and proceeds to specify when certain causes of action accrue and to establish the time period within which "an action brought by a victim of childhood sexual abuse asserting any claim resulting from childhood sexual abuse" needs to be commenced. *See Watkins*, 2015-Ohio-1776, at ¶ 10 (describing statute). To any extent that *Watson* is

correct that the statute is more than procedural and directly "impose[s] liability" on an actor, *see also* April 25, 2019 Entry at 6 (citing *Watson*), that interpretation does not displace the Supreme Court's statute of limitations reasoning in *Watkins* or alter the plain words of R.C. 2305.111(C) establishing the 12-year limitations period for victims of childhood sexual abuse "asserting any claim resulting from childhood sexual abuse." And insofar as *Watson* indicates that the statutory claim it conceives for "childhood sexual abuse" itself would not extend to anyone other than the alleged perpetrator, we certainly could agree (assuming, again, that a definitional section somehow might be construed to create a cause of action).

{¶ 34} We do not understand S.A.S.'s claims in Count I of her Complaint (for "Gross Sexual Imposition and Se[xu]al Imposition and/or Attempt Pursuant to 2907.05 and 2907.06," Complaint at page 6) to have been leveled against Wellington (as opposed or in addition to Dibble). *See id.* at ¶ 33 (concluding Count by asserting: "As a direct and proximate result of Defendant Dibble's offensive and inappropriate actions with Plaintiff, she has suffered damages * * *."); *see also* January 3, 2019 Entry at 5-7 (trial court's assessment of Wellington's motion for judgment on the pleadings does not separately assess that count, but begins with "A. Negligent Hiring, Retention, and Supervision"); April 25, 2019 Entry at 6-9 (same in assessing summary judgment motion). Her claims against Wellington follow that first count. But to any extent that Count I did mean to advance a freestanding claim against Wellington, as opposed to a claim against Dibble alone, the trial court properly dismissed it with the catch-all language of its summary judgment entry. April 25, 2019 Entry at 9. S.A.S. does not claim that the school or its headmaster themselves sexually abused her.

{¶ 35} Relatedly, and as S.A.S.'s counsel effectively acknowledged during argument to us, her Count III claim against Wellington for "Invasion of Privacy" as premised on allegations that Dibble engaged in voyeurism and "secretly videotaped and photographed [her] in various stages of undress in the locker room," Complaint at 44-47, does not qualify for a 12-year limitations period under the language of R.C. 2305.111(C). Voyeurism and secret videotaping do not come within the definition "childhood sexual abuse" as relevant to that limitations period: her allegations under this Count do not fit as predicated on conduct constituting rape, sexual battery, gross sexual imposition, or sexual imposition.

R.C. 2305.111(A)(1)(a) and (b). We therefore will affirm the trial court's grant of Wellington's motion for judgment on the pleadings on Count III, a grant premised on a four-year statute of limitations for invasion of privacy claims. *See* January 3, 2019 Entry at 6-7.

{¶ 36} S.A.S.'s claims for negligent hiring, retention, and supervision and for wrongful infliction of emotional distress should fall for much the same reason, Wellington now argues. Wellington had sold the trial court on its misguided theory that, while "Dibble clearly fits within the statute's description of an 'actor,' " the extended statute of limitations applies "only * * * to claims alleged against Dibble[,] not his supervisor/employer." April 25, 2019 Entry at 6; *compare, e.g.*, Wellington's August 15, 2018 Reply in support of motion for judgment on the pleadings at 8 ("Plaintiff alleges only 'gross sexual imposition' and 'sexual imposition' *against Dibble*") (emphasis in original); Wellington's April 8, 2019 Reply in support of motion for summary judgment at 1-2 ("the 'ordinary' statutes of limitation apply to Plaintiff's claims against the Wellington Defendants" because the trial court already had ruled that 12-year statute could not apply to Wellington based on "allegations of sexual misconduct *against Dibble*") (emphasis in original); *see also* Appellees' Brief at 18 ("applying the statutory language to the record before it," trial court awarded Wellington summary judgment because while Dibble fits as an actor, the 12-year limitations period does not extend to his employer). But now, on appeal, Wellington submits a new argument, urging that "Plaintiff's allegations *against Dibble* do not even meet the statutory definitions for [the predicate conduct of rape, sexual battery, gross sexual imposition, or sexual imposition] because she testified [during deposition] that Dibble never touched her." Appellees' Brief at 40. And it is accurate to say, as we have explained in reviewing the statute, that the 12-year limitations period established by R.C. 2305.111(C) is limited, with regard to the phrase at issue here, to victim actions "asserting any claim resulting from" conduct in specified circumstances that constitutes rape, sexual battery, gross sexual imposition, or sexual imposition.

{¶ 37} S.A.S. responds to Wellington's new argument by arguing both that the record is not unmixed as to direct or indirect touching by Dibble ("[a]t a minimum, there is a question of fact for a jury to decide whether or not he committed" predicate conduct), and, more significantly here perhaps, that "[t]he only reason the record is not abundantly

clear that Lawrence Dibble committed [such an act] is that [Wellington] never raised the question during the entire pendency of the case until they filed their brief with this Court"; the issue of lack of sufficiency of the allegations involving Dibble could have been addressed through factual and/or procedural supplementation, she suggests, had it been properly joined. Appellant's Reply at 18 (adding, correctly: "It was not raised in [Wellington's] motion for judgment on the pleadings nor was it raised in their motion for summary judgment. The trial court never raised or addressed the question in its rulings nor were it[s] rulings even remotely based on the question") (record citations omitted).

{¶ 38} It is for the trial court in the first instance to sort through the potentially intertwined factual and legal issues as to whether, under the standards applicable to a given proceeding, any of Dibble's conduct with regard to S.A.S. could rise to the level of gross sexual imposition or sexual imp0sition. That issue has not been presented to or carefully evaluated by the trial court to this point. *Compare* April 25, 2019 Entry at 6 ("Dibble clearly fits within the statute's description of an 'actor' "); Appellees' Brief at 42 (submitting that a teacher "is an 'actor' under R.C. 2305.111(A)(1)(b)(iii) *only when* his/her own conduct would constitute a 'criminal act' of 'gross sexual imposition' or 'sexual imposition' as statutorily defined," and noting that Wellington is not accused of such conduct).

{¶ 39} Here, as in most contexts, we conclude that "[u]nder Ohio law, 'arguments raised for the first time on appeal are improper.' " *Tucker v. Leadership Academy for Math*, 10th Dist. No. 14AP-100, 2014-Ohio-3307, ¶ 20 (citation omitted). And "while this court's standard of review on a motion for summary judgment is de novo, that standard 'does not supersede [an appellate court's] settled practice of not addressing issues raised for the first time on appeal.' " *Id.* (citations omitted). That practice promotes fairness and completeness, and thereby facilitates appropriately reasoned review. Thus, the usual rule is that " ' "[a] party may not assert a new legal theory for the first time before an appellate court. " ' " *Neihaus v. The Columbus Maennerchor*, 10th Dist. No. 07AP-1024, 2008-Ohio-4067, ¶ 55 (citations omitted).

{¶ 40} Just as we would here with effective date issues of whether the statute is triggered, we leave to the trial court to assess in the first instance whether under the facts and the law, and if so on what basis, Dibble may have engaged in conduct regarding S.A.S. that falls within the R.C. 2305.111 definition of "childhood sexual abuse."

{¶ 41} We therefore confine our decision at this juncture to explaining that the 12-year statute of limitations set forth in R.C. 2305.111(C) can apply, within the contexts specified by the statute, beyond claims against an individual perpetrator of childhood sexual abuse himself or herself (and whether convicted or not), to reach "an action brought by a victim of childhood sexual abuse asserting any claim resulting from childhood sexual abuse" as statutorily defined. Because the trial court erred in construing the statute otherwise, and because that error was the basis of the trial court's dismissal of S.A.S.'s claims against Wellington in Counts II and IV of her Complaint, we sustain to that extent S.A.S.'s single assignment of error. As to those counts, we reverse the trial court's grant of summary judgment on and dismissal of those claims against Wellington. We affirm the trial court's partial grant of judgment on the pleadings and dismissal of S.A.S.'s Count III claims against Wellington for invasion of privacy. We remand the case to the trial court for further proceedings consistent with this decision.

*Judgment reversed in part and affirmed in part; cause remanded.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____